In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00471-CR
_____

ALBERTO MELENDEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 17-01-01044-CR

_____

MEMORANDUM OPINION

A jury found Alberto Melendez guilty of attempted aggravated sexual assault of a child. *See* Tex. Penal Code Ann. §§ 15.01, 22.021. The jury assessed punishment at ten years and assessed a fine of $10,000 but recommended that the term of confinement be suspended and that Melendez be placed on community supervision. The trial court suspended the sentence of confinement and placed Melendez on community supervision for seven years. We affirm the trial court's judgment.

1

## Background

A grand jury indicted Melendez, alleging that

> Alberto Melendez, on or about January 20, 2017, . . . did then and there, with the specific intent to commit the offense of Aggravated Sexual Assault of a Child, do an act, to-wit: driving to the arranged meeting location with the specific intent to engage in sexual intercourse, or deviate sexual intercourse with J. Martinez, a minor, amounting to more than mere preparation that tended to but failed to effect the commission of said offense[.]

At trial, Sergeant Jason Martinez testified that he is a detective with the Precinct 3 Montgomery County Constable's office and is assigned to the Internet Crimes Against Children Division. Sergeant Martinez testified that he created a Houston Craigslist ad in the "casual encounters" and "women for men" sections of the website in January 2017. According to Sergeant Martinez, he posted the ad as part of his job investigating adults exploiting children online. Sergeant Martinez testified that most of the time once the people responding to ads like the one he posted realize that the ad involves children, the responders "disengage and don't continue to talk or they report me or they report the ad."

A copy of the ad, which Sergeant Martinez posted was titled "what is taboo?[,]" and it was admitted into evidence. The ad stated the following:

> Single mom looking to have some fun since I'm divorced now. No weirdos, creeps, games or endless requests for pictures. Mommy likes to play but you're going to have to work to get the goods.

Sergeant Martinez testified that in the ad he indicated a geographical area and attached his "KIK code[,]" which allowed a person to message him privately through "a text messaging app known as KIK." Sergeant Martinez explained that KIK is an app that allows some anonymity to text between parties because it "can be used solely on a wifi connection, so the activity won't appear on a cell phone bill." According to Sergeant Martinez, based on his use in the ad of "buzz words" and "indicating in the ad that mommy likes to play and put that together with taboo," a person responding to the ad that was familiar with these terms "could draw a relatively informed decision of what they were responding to."

Sergeant Martinez explained that he took screenshots of the texts between himself and Melendez after Melendez responded to the ad, and that ultimately a copy of the KIK chats from Melendez's cell phone were obtained based on a search warrant. The screenshots taken by Sergeant Martinez of the messages and the copy of the messages from the "cell phone dump" were admitted into evidence and published to the jury.

The screenshots of the text messages between Sergeant Martinez and Melendez show the following exchange, and the phone records show the exchange started on January 19, 2017, and ended on January 20, 2017:

> [Melendez]: Hi there
> [Melendez]: I read your CL posting

3

[Sgt. Martinez]: And..:.?
[Melendez]: Are you looking for a playmate?
[Melendez]: Just mutual satisfaction between adults
[Sgt. Martinez]: I'm looking for someone to play with me and my daughter… together.. I'm 34 and she's 12
[Melendez]: Really?
[Melendez]: What do you have in mind

. . . .

[Melendez]: I asked what you had in mind
[Melendez]: I'm interested
[Sgt. Martinez]: Cool.. a dude flaked out on us for this morning
[Melendez]: So what do you think
[Melendez]: What are you into?
[Melendez]: Taboo?
[Sgt. Martinez]: Yes..mother/daughter
[Melendez]: Hot

. . . .

[Melendez]: Will she join us in bed?
[Sgt. Martinez]: Yes.. !
[Melendez]: Have you trained her to be with you
[Sgt. Martinez]: She's been with one guy but that was just oral

. . . .

[Melendez]: I could join
[photograph of erect penis sent by Melendez]
[Sgt. Martinez]: We're home until 2 today

. . . .

[Melendez]: I'm free all day
[Melendez]: Can I eat her while you ride this?
[Melendez]: She can watch us and learn
[Melendez]: Join as much as she likes
[Melendez]: Defin oral
[Melendez]: Watch mommy and learn how to take a man
[Sgt. Martinez]: You can eat her and her and I can go down on you

. . . .

[Melendez]: I eat you and she sucks me
[Sgt. Martinez]: Yes pls

. . . .

[Melendez]: Where could we meet

4

[Melendez]: ?
[Sgt. Martinez]: Yes!! My place
[Melendez]: Awesome
[Melendez]: What time
[Melendez]: ?
[Sgt. Martinez]: 930?
[Melendez]: What part of town are you
[Sgt. Martinez]: The woodlands
[Melendez]: Ok
[Melendez]: I'm on the other side. And need shower. 10 ok?
. . . .
[Melendez]: Address?
. . . .
[Melendez]: You realize how taboo this is
[Sgt. Martinez]: Absolutely I do
[Melendez]: And illegal
[Sgt. Martinez]: Only if we get caught lol. Your not a cop are you? [laughing emoji]
[Melendez]: No.
[Melendez]: But you are initiating something that could get you in trouble if she tells anyone
. . . .
[Melendez sends picture of his face]
. . . .
[Sgt. Martinez]: My apartment complex is 8900 research park
[Melendez]: K
[Sgt. Martinez]: But come to the back
[Melendez]: Huh
[Sgt. Martinez]: Gate.. on the back. What are you in so I k ow to buzz u im
[Melendez]: Grey car
[Sgt. Martinez]: Don't go in the main gate. My apartment is in back by the gate. Go to the dead end almost

Sergeant Martinez testified that on January 20, 2017, Melendez arrived at the designated meeting location and that one marked police unit and three to four

detectives in unmarked vehicles were on the scene as part of the investigation. Sergeant Martinez testified that before Melendez arrived at the designated meeting place, Melendez sent a photo of himself and the person depicted in the photo was the person who showed up at the designated meeting place. According to Martinez, "the marked unit was called in to initiate the felony traffic stop, and [Melendez] was ultimately detained and taken into custody." At trial, Sergeant Martinez identified Melendez as the man who was taken into custody that day.

Melendez's sister-in-law testified that she has known Melendez over sixteen years, and that based on her observations of his interactions with her children and her children's friends, she believes Melendez has an outstanding character for the good, safe, and moral treatment of kids and young teens. According to the sister-in-law, it would surprise her to know that Melendez used explicit language in talking about the acts that he wanted to perform on a minor child and have that minor child perform on him, and it would be "out of character."

Melendez's wife testified that at the time of trial she had been married to him for eleven years but had filed for divorce since Melendez's arrest. According to his wife, they have no children together, he has a fifteen-year-old adopted daughter from a previous marriage and she has two daughters, ages twenty-four and twenty-six, from her previous marriage. His wife testified that she has observed Melendez

6

interact with the daughters, their friends, and her grandchildren, and that he is "very respectful of the girls[]" and "would never hurt a child." His wife testified that she believes Melendez had intentions of meeting up with a thirty-four-year-old woman but does not believe it was her husband's "full intention[] . . . to meet up with a child and have sex."

## Exclusion of Evidence

In his first issue, Melendez argues that the trial court abused its discretion by excluding the contents of his cell phone. According to Melendez, his defensive theory presented at trial was that he lacked the specific intent to commit the offense because he was only engaging in "fantasy[-]based text exchanges with a 'woman' he believed was an adult[,]" which he had on previous occasions done with other adults. Specifically, Melendez argues that his cell phone contained conversations between him and other adults using the terms "daddy" and "mommy" in fantasy and sexual scenarios not involving children, that these conversations were not hearsay because they were not offered for the truth of the matters asserted, and that these excluded conversations "directly refute[] the State's evidence of specific intent . . . and go[] to the Appellant's state of mind." He contends the exclusion of the evidence prevented him from presenting his defensive theory.

During the cross examination of Sergeant Martinez, the defense tried to offer into evidence the entire "phone dump" obtained from Melendez's phone as part of the search warrant. The State objected on hearsay and relevancy grounds. The defense responded as follows:

> I think the phone dump consists of other chats that certainly are not being offered for the truth of the matter asserted, but some of the chats contain language, the use of the terms "daddy" that he used before, that he's used before in other - - which he can confirm are adult-on-adult chats. [Sergeant Martinez] just testified about the use of mommy or daddy implies something completely different. I've got to be able to show state of mind of the defendant, that these are adult chats are habit, are routine.
> . . . .
> Relevant to show - - I guess, it's sort of reverse 404(b) as a starting point is to show habit/routine on his part. He does this, but it's always with adults.
> . . . .
> [The proffered exhibit] is to rebut specifically what Sergeant Martinez just said about the use of the term daddy implies or should imply something taboo or something dealing with children; whereas, this defendant's own experience is just the opposite of that.

The trial court sustained the State's objection.

We review a trial court's ruling on the admission or exclusion of evidence under an abuse of discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a trial court's ruling absent a clear abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). There is no abuse of discretion as long as the court's ruling is within the zone of reasonable

8

disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009). Moreover, error in the admission or exclusion of evidence will not support reversal unless the error affected a substantial right of the complaining party. Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the record as a whole provides fair assurance that the error in evidentiary rulings did not influence the jury, or influenced the jury only slightly, reversal is neither required nor appropriate. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001).

Even assuming without deciding that the trial court erred in excluding the entire phone contents which purportedly included "fantasy-based texts" between Melendez and other adults using terms like "mommy" and "daddy[,]" based on the record before us we conclude the error was harmless. *See* Tex. R. App. P. 44.2. Assuming the other communications on Melendez's phone were representative of what he describes and assuming the communications contained "fantasy-based texts" with other adults on other occasions, such conversations would not establish that he lacked the intent to commit the crime for which he was indicted. The jury heard Sergeant Martinez testify about the messages exchanged between Melendez and Sergeant Martinez, and the screenshots of the messages were admitted and

9

published to the jury. The messages clearly indicate from their content that Melendez discussed engaging in sexual activity with a minor and that he knew such activity was illegal. The jury heard Sergeant Martinez testify that during the chat exchange with Melendez that Melendez never told Martinez that he did not want to engage in sexual conduct with a twelve-year-old, there were roughly seven or eight sexual innuendos where the child is concerned, and the language used in the chat indicated that Melendez discussed engaging in deviant sexual activity or oral sex with the twelve-year-old. We conclude any error in excluding the additional contents of the phone from evidence had no substantial and injurious effect in determining the jury's verdict nor did it affect a substantial right of Melendez. Thus, any such error must be disregarded. *See id.* We overrule issue one.

## Indictment

In his second issue, Melendez argues that there was a fatal and material variance between the allegations in the indictment and the evidence presented at trial. According to Melendez, the indictment lists the complainant as "J. Martinez, a minor[,]" but only the fictional mother was being portrayed by Officer Martinez and not the complainant, the fictional daughter. Melendez states that his sufficiency challenge is not based on the fact that the child did not exist.

10

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Texas courts routinely treat the issue of variance as a challenge to the legal sufficiency of the evidence. *Id.* at 247. Only a "material" variance, one that prejudices a defendant's substantial rights, will make the evidence insufficient. *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). This circumstance occurs when the indictment, as written, (1) fails to inform the defendant of the charge against the defendant sufficiently to allow the defendant to prepare an adequate defense at trial, or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Id.* The Court of Criminal Appeals has recognized three categories of variance:

1. a statutory allegation that defines the offense; not subject to a materiality analysis, or, if it is, is *always material*; the hypothetically correct jury charge will always include the statutory allegations in the indictment;
2. a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; *sometimes material*; the hypothetically correct jury charge sometimes will include the non-statutory allegations in the indictment and sometimes will not;
3. a non-statutory allegation that has nothing to do with the allowable unit of prosecution; *never material*; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Id.* (emphasis in original). The bottom line is that, in a sufficiency review, courts tolerate variances as long as they are not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument. *Id.*

In a review for legal sufficiency, we view all of the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (relying on *Jackson v. Virginia*, 443 U.S. 307 (1979)). We cannot reevaluate the weight or credibility of the evidence; instead, we defer to the jury's resolution of conflicts in the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

The State argues there was no variance because Martinez was playing the role of both of the individuals Melendez would meet, and the indictment's description of "J. Martinez, a minor" showed the facts as Melendez believed them to be—that one of the people he was going to meet for sex was a minor. If there was no variance, then there could not have been a material variance and Melendez's sufficiency argument lacks merit. *See Grant v. State*, 970 S.W.2d 22, 23 (Tex. Crim. App. 1998). Assuming without deciding that there was a variance between the allegations in the indictment and the proof at trial, we conclude that the variance would not be material.

On appeal, Melendez argues that the alleged variance describes an allowable unit of prosecution—the victim. He argues the variance is material and states the following in support of his position that his substantial rights were affected by the variance:

> The Appellant was not provided adequate notice in the case, as he was incorrectly informed that J. Martinez was the complainant and a minor. Additionally, the complainant, as alleged, goes to the allowable unit of prosecution and would subject the Appellant to double jeopardy problems.

We disagree. The record indicates that although "J. Martinez" is not "a minor[,]" Sergeant Jason Martinez was the officer who posted the Craigslist ad as the fictitious minor's fictitious mother. It was not until Melendez moved for a directed verdict that he argued that the wording of the indictment regarding the complainant's identity amounted to a material variance that created "a potential jeopardy issue" and "a notice issue." Melendez fails to present an argument or authority as to how the language of the indictment as to the complainant subjects him to double jeopardy prosecution. Melendez has failed to show the variance is material. *See Gollihar*, 46 S.W.3d at 247-48. As to the notice issue, Melendez did not argue at trial and does not argue on appeal that he anticipated the State would present evidence of a minor named "J. Martinez[.]" During opening statements, defense counsel summarized what he expected the evidence to show, including

13

Sergeant Martinez's testimony, and the record reflects that after he was arrested Melendez was aware that "J. Martinez" was the detective posing as the fictitious mother, and that the minor was a fictitious minor. Melendez has failed to show the variance prejudiced his substantial rights, and we conclude that the alleged variance was not material. *See id*. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on August 8, 2019
Opinion Delivered October 23, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.