NEWELL, J., delivered the unanimous opinion of the Court.
The State's DWI information in this case alleged that Appellant, Jason Ramjattansingh, had committed the offense of driving while intoxicated. It also alleged that he had an alcohol concentration level of 0.15 or more "at the time the analysis was performed," as the Class A DWI statute requires. But the information went further, alleging that Ramjattansingh also had this alcohol concentration level "at or near the time of the commission of the offense," which the statute does not require. The jury charge tracked the information, requiring the jury to find this extra element. The jury convicted Appellant, but the court of appeals reversed. The court, measuring the sufficiency of the evidence under the charge given, found the evidence insufficient to prove the extra element. Under Malik , when a jury instruction sets forth all the elements of the charged crime but incorrectly adds an extra element, a sufficiency challenge is assessed against the elements of the charged crime, not against, as the Supreme Court has put it, "the erroneously heightened command in the jury instruction."[1] This is true where, as here, the extra element was included in the charging instrument. And this is true where, as here, the State fails to object to the erroneously heightened jury instruction.
I. Background
A. Facts
At 9:32 p.m., on April 9, 2015, tow truck driver Joshua Wilson dialed 911 to report he was following a "drunk driver" who was "all over the road" and had almost caused several accidents. Wilson (referred to by police as the "wheel witness") described the vehicle and provided the license plate number. With his tow truck's amber lights on, Wilson got the attention of the driver, Appellant, who pulled off the road into a public parking lot. Still on the phone with *544 the dispatcher, Wilson reported that he and the driver had stopped. HPD Officer Saul Delacruz arrived within minutes, in anticipation of the arrival of a DWI unit. Delacruz found Appellant and Wilson standing outside their vehicles. Wilson told Delacruz that Appellant had been driving erratically and almost hit other vehicles. Delacruz himself noticed Appellant swaying, deemed him intoxicated, and, by 9:48, had detained Appellant for suspicion of driving while intoxicated.
Officer Anasa Beaudion arrived around 10:05 to conduct the DWI investigation. She took Appellant out of Delacruz's patrol vehicle and removed his handcuffs. She observed a strong odor of alcohol on Appellant's breath and that he was unable to balance himself. She asked him if he'd been drinking. Appellant "said he had some shots, shots of alcohol," and that he had started drinking "around 5:00." Beaudion administered three field sobriety tests-the horizontal nystagmus test, one-leg stand test, and walk-and-turn test.
Appellant could not finish the horizontal nystagmus test because "he was not holding his head still." And he showed signs of intoxication during the other two tests: "three out of the four clues" on the one-leg stand test, and "six out of the eight clues" on the walk-and-turn test. By 10:40, Beaudion had decided that Appellant was "very intoxicated" and she placed him under arrest and took him to HPD's Central Intoxication Center. The results of the two breath samples given, one at 11:29 and one at 11:30, were ".235 and .220 grams per 210 liters of breath." According to Carly Bishop, the technical supervisor for DPS's Safety Breath Alcohol Testing Program, it would take the average person "11 standard shots" to get to such an alcohol concentration, and that person would have lost the normal use of his physical or mental faculties.
But Bishop could not calculate Appellant's alcohol concentration at the time of driving. She lacked the facts-the time of Appellant's last meal and what he consumed, the time of his last drink, and the time of the stop-necessary to do so. Bishop allowed that it was possible Appellant could have downed all the shots immediately before getting behind the wheel, causing his alcohol concentration to be rising at the time of driving.
B. Trial
The State charged Appellant with Class A driving while intoxicated.[2] The information set out all the elements of the offense of driving while intoxicated, as follows:
Comes now the undersigned Assistant District Attorney of Harris County, Texas on behalf of the State of Texas, and presents in and to the County Criminal Court at Law No. _____ of Harris County, Texas, that in Harris County, Texas, JASON RAMJATTANSINGH, hereafter styled the Defendant, heretofore on or about April 9, 2015, did then and there unlawfully operate a motor vehicle in a public place while intoxicated.
In a separate paragraph, the State also alleged that Appellant's offense should be elevated to a Class A misdemeanor by virtue of having a blood alcohol content over 0.15. But rather than simply tracking the language of the statute by alleging that Appellant's alcohol concentration was at least 0.15 "at the time the analysis was performed", the information added an extra element, emphasized here, as follows:
It is further alleged that, at the time of the analysis and at or near the time of *545 the commission of the offense , an analysis of the Defendant's BREATH showed an alcohol concentration level of at least 0.15.
The jury was charged on both the Class A and Class B misdemeanor offenses of DWI. Both required the jury to determine that Appellant was intoxicated at the time he was driving. The Class A jury charge contained the extra language requiring the jury to determine that Appellant had an alcohol concentration of at least .15 at the time of the analysis. But it also contained the extra element, again, emphasized here,
Therefore, if you believe from the evidence beyond a reasonable doubt that in Harris County, Texas, JASON RAMJATTANSINGH, hereafter styled the Defendant, heretofore on or about April 9, 2015, did then and there unlawfully operate a motor vehicle in a public place while intoxicated, and you further find that an analysis of the Defendant's breath showed an alcohol concentration of at least .15 at the time of the analysis, and at or near the time of the commission of the offense , then you will find the Defendant guilty.
The jury specifically found Appellant guilty "of driving while intoxicated with a breath analysis of at least .15 at the time of the analysis, and at or near the time of commission of the offense, as charged in the Information."
C. Appeal
Appellant asserted on appeal that the evidence was legally insufficient to sustain the jury's finding of guilt on the Class A misdemeanor. The court of appeals agreed.[3] The court noted that the Texas DWI statute "merely requires a defendant to have an alcohol concentration of .15 at the time of analysis to elevate the offense to a Class A misdemeanor."[4] But the State's information alleged more: "that Ramjattansingh had an alcohol concentration of .15 or more both at the time of the analysis and at or near the time of the offense."[5] So, the court held, the State was stuck with the jury charge that likewise required more.[6] And though it was "undisputed that his alcohol concentration was greater than .15 at the time of the breath test," the court held that the evidence could not support a juror finding, "beyond a reasonable doubt, that Ramjattansingh's alcohol concentration was .15 or more near the time of the offense."[7] The court reversed Appellant's conviction for the Class A misdemeanor of driving while intoxicated, rendered a judgment of acquittal with respect to that offense, and remanded for a new trial on the lesser-included Class B misdemeanor offense.[8] We granted review to consider whether the State's choice to include the extra element of "at or near the time of the commission of the offense," in the Class A allegation in this case, and its acquiescence in a jury charge including that same extra element, takes this case out from under Malik .[9]
*546 II. Standard of Review
A. The Jackson / Malik Standard
In an evidentiary-sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[10] As the Supreme Court recently made clear in Musacchio v. United States , a reviewing court's limited determination on sufficiency review does not rest on how the jury was instructed.[11] The question before the Supreme Court was "how a court should assess a challenge to the sufficiency of the evidence in a criminal case when a jury instruction adds an element to the charged crime and the Government fails to object."[12] The Court held that it "should be assessed against the elements of the charged crime, not against the erroneously heightened command in the jury instruction."[13]
In Malik v. State , this Court set forth the modern Texas standard for ascertaining what those elements are.[14] They are the elements "defined by the hypothetically correct jury charge for the case," a charge that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[15]
"As authorized by the indictment" means the statutory elements of the offense as modified by the charging instrument.[16] When a Texas statute lists more than one method of committing an offense or definition of an element of an offense, and the indictment alleges some, but not all, of the statutorily listed methods or definitions, the State is limited to the methods and definitions alleged.[17] But the hypothetically correct jury charge does not necessarily have to track exactly all of the charging instrument's allegations.[18] Under Gollihar v. State , whether an unproved allegation is to be included in the *547 hypothetically correct jury instruction is determined by whether or not the variance between the allegation and proof is "material."[19] This construct we found in keeping with "our stated policy in Malik to bring our state courts' sufficiency of the evidence review in line with Jackson ."[20]
B. Variances
Only a "material" variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient. This happens when the indictment, as written, 1) fails to adequately inform the defendant of the charge against him, or 2) subjects the defendant to the risk of being prosecuted later for the same crime.[21] This Court has recognized three different categories of variance.[22]
1. a statutory allegation that defines the offense; not subject to materiality analysis, or, if it is, is always material ; the hypothetically correct jury charge will always include the statutory allegations in the indictment;[23]
2. a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; sometimes material ; the hypothetically correct jury charge will sometimes include the non-statutory allegations in the indictment and sometimes not;[24]
3. a non-statutory allegation that has nothing to do with the allowable unit of prosecution; never material ; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.[25]
The bottom line is that, in a sufficiency review, we tolerate variances as long as they are not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument.[26]
III. Analysis
The question here is whether the filing of a charging instrument containing non-statutory language prohibited the appellate court from considering the hypothetically correct jury charge in a sufficiency review. Before we get to that question, we *548 address the hypothetically correct jury charge for this case.
A. The Hypothetically Correct Jury Charge in this Case
A person commits Class B misdemeanor DWI if the person is intoxicated while operating a motor vehicle in a public place.[27] "Intoxicated" means either "not having the normal use of mental or physical faculties" by reason of "the introduction of alcohol" (or "any other substance") into the body, or "having an alcohol concentration of 0.08 or more."[28] In order to prove the offense of driving while intoxicated, the State must prove that the defendant operated a motor vehicle while intoxicated. If the State intends to rely upon the per se definition of intoxication, it must prove that the defendant had an alcohol concentration of at least .08 at the time of driving.[29] If the State does not intend to rely upon that definition of intoxication, it need only prove intoxication at the time of driving by showing that the defendant had experienced a loss of the normal use of his or her mental or physical faculties.[30]
But, if the State also proves that a defendant had "an alcohol concentration level of 0.15 or more at the time the analysis was performed," the offense is a Class A misdemeanor.[31] Unlike the Class B
offense of driving while intoxicated, this additional statutory requirement only requires that the State prove that the defendant had an alcohol concentration level of at least 0.15 at the time the analysis was performed. The hypothetically correct jury charge for the Class A misdemeanor alleged in this case requires proof of
• Class B driving while intoxicated (that is, operating a motor vehicle in a public place while "not having the normal use of mental or physical faculties" by reason of the introduction of alcohol into the body, or "having an alcohol concentration of 0.08 or more"); and
• "an alcohol concentration level of 0.15 or more at the time the analysis was performed"
but not
• "an alcohol concentration level of 0.15 or more at or near the time of the commission of the offense"
This is because the additional "at or near the time of the commission of the offense" language, alleged in the information here, fits the test for an immaterial variance, the kind in the third category of variance above. This extra language was a non-statutory allegation that has nothing to do *549 with the allowable unit of prosecution. It was an extra, made-up requirement. Appellant argues that the language created a material variance (the kind in the second category of variance above) because it misled the defense; the State's "deliberate decision" to charge Appellant with having an alcohol concentration of at least .15 at or near the time of the offense "necessarily led him to believe he would have to defend against this discrete allegation."[32] But Appellant's defense was not limited to refuting this extra language. Appellant's defense was that there was no adequate, non-hearsay proof of Appellant driving at all. Defense counsel remarked in opening that:
What you're not going to hear, what you're not going to see is someone come stand right over here, swear in from the Judge just like you saw him do, sit here and tell you that they saw Mr. Ramjattansingh driving a car.
* * *
And what you're going to see in this case is that Mr. Ramjattansingh-there's no evidence that Mr. Ramjattansingh was intoxicated while he was driving.... Whether he was operating a car is what you need to pay attention to.
And in closing he reiterated those themes.
Yesterday I told y'all two things. I told you, you are not going to see someone take this stand, swear under oath like the other four witnesses did and say they saw Mr. Ramjattansingh driving a vehicle that night or operating a motor vehicle in a public place.
* * *
You heard-what the state provided you was a 911 call. We have no idea where anybody was at the time that 911 call was made. Officer Delacruz told you that. He told you he has no idea how long the defendant and Mr. Wilson, who we never heard from or saw here, how long they had been there. No idea if they had been pulled over for 30 minutes longer than that. No idea whatsoever. That's what you have to keep in mind is, I told you you weren't going to hear that, and you haven't heard that.
* * *
Now, the other thing that I told you in this case is that time was going to be a big factor. And every one of the state's witnesses told you that time was an issue. Time of driving, that's what we don't know. The state's expert can't give you any kind of an idea what his [alcohol concentration] was at the time of driving because no one knows what the time of driving was.
Mr. Wilson might be able to tell you that if he actually saw my client driving, but Mr. Wilson is not here. He didn't show up. No one knows where he is.
* * *
You don't have any evidence of when Jason was driving. You don't have any evidence that he was intoxicated at that time.
Appellant did not anchor his case to challenging the alcohol concentration at the time of the test as compared to the concentration at or near the time of driving. Appellant's defensive theory was that the State could not prove he had committed even a Class B DWI. According to Appellant, the State could not wheel him because there was no evidence establishing when Appellant was driving. Period. Because the variance between the non-statutory allegation and the proof presented at trial is immaterial, the hypothetically correct jury charge need not include it.
*550 B. The Doctrine of Invited Error Does Not Apply
The court of appeals acknowledged that evidentiary sufficiency ordinarily must be measured under a hypothetically correct jury charge rather than the charge given. But the court held that this case does not fall under Malik because "in this case, the State did not merely acquiesce in an additional burden by failing to object to the jury charge; rather, the State affirmatively created the additional burden by the way in which it chose to charge Ramjattansingh in the information."[33] Malik , on the other hand, concerned only jury charges that imposed a burden on the State "beyond that which was legally required and beyond the allegations in the indictment."[34]
The doctrine of invited error estops a party from asking for something, getting what it asked for, and then complaining about the outcome. The doctrine applies when the complaining party was the "moving factor" in creating the purported error it complains about. In this instance, the higher burden about which the State complains would not have been included in the jury charge had the State not charged Ramjattansingh with having an alcohol concentration of .15 or more when he was behind the wheel. We therefore reject the State's argument for review under a hypothetically correct jury charge because it is an impermissible attempt to disown the higher burden of proof that appeared in the actual charge only as a result of the State's charging decision.[35]
It appears that this aspect of the court of appeals' decision may have been influenced by the court's previous decision in Meza v. State .[36]
Meza's information, like Appellant's, included the allegation of an alcohol concentration of .15 or more at or near the time of the offense.[37] At the charge conference, the trial judge pointed out that the information contained surplusage that was not required by the statute-the requirement that Meza's alcohol concentration "be .15 near the time of the offense rather than just at the time of the analysis of his breath."[38] The trial judge suggested that the State abandon the language in the information and remove it from the proposed charge, which would render the State's inability to conduct a retrograde extrapolation irrelevant.
But, the "State declined to do so, stating it was department policy-in order to be fair to defendants-not to abandon surplusage language after trial has begun, even when it increases the State's burden."[39] The jury convicted Meza of Class A misdemeanor DWI as charged in the information. The court of appeals reversed because the State's expert had conceded that she could only speculate about Meza's alcohol concentration at the time of the offense based on a subsequent breath test.[40] The State did not, in Meza , quarrel with the court's measuring the sufficiency of the evidence against the charge given, as it does here.
Regardless of what the "department policy" was or is, the opinions in this case and *551 in Meza conflict with Gollihar because the degree to which estoppel applies in a sufficiency analysis is defined by Gollihar itself. Gollihar's indictment alleged that he "unlawfully appropriat[ed] one Go-Cart Model 136202, of the value of less than $1500."[41] A Walmart employee answered affirmatively when asked if the cart taken was model number 136203, and there was no other evidence as to the model number of the cart.[42] With no objection from the State, the jury charge tracked the language from the indictment, requiring the jury to find that Gollihar stole a model number 136202 go-cart.[43] And the jury found Gollihar guilty as charged.[44]
On direct appeal, Gollihar argued the evidence was insufficient. The court of appeals agreed.[45] Like the court of appeals in this case, the court said Malik did not apply.[46] And like the court of appeals in this case, the court said that because the State did not object to the jury charge that enhanced its burden of proof, the sufficiency of the evidence would be measured against that charge.[47] We ultimately reversed.
Noting that " Malik flatly rejected use of the jury charge actually given as a means of measuring sufficiency of the evidence," we held that "a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances."[48] We made clear that use of the hypothetically correct jury charge does not turn on whether the "extra burden" in the jury charge appeared out of thin air, rather than in the State-produced information or indictment.[49] We specifically rejected Gollihar's proposition that the State was "bound to shoulder the burden it alleged in the indictment and acquiesced in by failing to object to the charge."[50]
Indeed, in Cornwell v. State , we recently held that we should still look to the hypothetically correct jury charge to evaluate the sufficiency of the evidence even when the State erroneously included unnecessary surplusage in the indictment.[51] Cornwell was indicted for impersonating a public servant.[52] The indictment contained some non-statutory language, that he did so "by trying to resolve a criminal case."[53] Cornwell argued that the evidence was insufficient to prove that he impersonated an assistant district attorney "by trying to resolve a criminal case."[54] We noted that the adverbial phrase "by trying to resolve a criminal case," seemed to be just tacked onto the end of statutory language.[55] We concluded that, whatever the phrase's purpose, "it should not be incorporated into the 'hypothetically correct jury charge' against which to measure sufficiency of the *552 evidence."[56] The variance in Cornwell , like that in Gollihar , was precipitated by the State, but in neither case did we deviate from evaluating the sufficiency of the evidence against the hypothetically correct jury charge.
IV. Conclusion
We measure the sufficiency of the evidence against the elements of the offense as they are defined in the hypothetically correct jury charge. If a jury instruction includes the elements of the charged crime but incorrectly adds an extra, made-up element, a sufficiency challenge is still assessed against the elements of the charged crime, regardless of the source of the extra element. We reverse the court of appeals' judgment and remand the case to that court for proceedings consistent with this holding.

Musacchio v. United States , --- U.S. ----, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016).

See Tex. Pen. Code § 49.04(a), (d) (converting Class B misdemeanor DWI to a Class A misdemeanor whenever a person driving while intoxicated is shown to have had an "alcohol concentration level of 0.15 or more at the time the analysis was performed").

Ramjattansingh v. State , 530 S.W.3d 259, 264 (Tex. App.-Houston [1st Dist.] 2017).

Id. at 262.

Id.

Id. at 263.

Id.case-ids="12386369" index="6" url="https://cite.case.law/sw3d/530/259/#p264"> at 263-64.

Id.case-ids="12386369" index="7" url="https://cite.case.law/sw3d/530/259/#p264"> at 265.

We granted review of two questions:
1. Does the filing of a charging instrument containing non-statutory language prohibit the appellate court from considering the hypothetically correct jury charge in a sufficiency review?
2. Did the First Court of Appeals sit as a thirteenth juror when holding that a two-hour interval between the time of the stop and the breath test was not sufficient to prove the appellant's breath alcohol concentration was a 0.15 near the time of the offense?
Because we answer the first question no, we find the second question moot and therefore improvidently granted. We will remand to the court of appeals for proceedings consistent with this opinion.

Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

136 S.Ct. at 715.

Id. at 713.

Id. at 715. In a footnote the Court stated it was expressing "no view on the question whether sufficiency of the evidence at trial must be judged by reference to the elements charged in the indictment, even if the indictment charges one or more elements not required by statute." Id. , n.2. But Musacchio involved actual statutory elements. This case involves a made-up element. A made-up element is not a "substantive element" of the criminal offense as defined by state law against which we conduct a federal due-process evidentiary-sufficiency review. Adames v. State , 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). Nor is a made-up element, barring some issue about notice or double jeopardy, among the "elements of the offense as defined by the hypothetically correct jury charge." See ids="7319166" index="16" url="https://cite.case.law/sw3d/353/854/#p860">id. at 861.

953 S.W.2d 234 (Tex. Crim. App. 1997).

Malik , 953 S.W.2d at 240 ; Adames , 353 S.W.3d at 860.

Curry v. State , 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

Cada v. State , 334 S.W.3d 766, 773-74 (Tex. Crim. App. 2011) ; Curry , 30 S.W.3d at 398.

Johnson v. State , 364 S.W.3d 292, 294 (Tex. Crim. App. 2012).

46 S.W.3d 243, 257 (Tex. Crim. App. 2001).

Id.

Id. at 248-49.

Johnson , 364 S.W.3d at 298 ; see also Daugherty v. State , 387 S.W.3d 654, 666 (Tex. Crim. App. 2013) (Hervey, J., dissenting).

Cada , 334 S.W.3d at 774 ("The Texas 'immaterial variance' law as set out in Gollihar does not apply to the specific statutory elements alleged in the indictment."); Johnson , 364 S.W.3d at 295 (noting that if "immaterial variance" law does apply, "a variance of this sort is always material").

Compare Byrd v. State , 336 S.W.3d 242, 244 (Tex. Crim. App. 2011) (variance material; theft indictment alleged one non-statutory descriptor, that the defendant took property from Mike Morales but the State proved another, that the defendant took property from Wal-Mart), with Fuller v. State , 73 S.W.3d 250, 251, 254 (Tex. Crim. App. 2002) (variance immaterial; assault indictment alleged one non-statutory descriptor, that the victim was "Olen M. Fuller," but the State proved another, that the victim was "Mr. Fuller").

Johnson , 364 S.W.3d at 298 (variance immaterial; aggravated assault indictment alleged one non-statutory descriptor, that defendant caused serious bodily injury to the victim by hitting her with his hand or by twisting her arm with his hand, but the State proved another, that the defendant caused serious bodily injury to the victim by throwing the victim against a wall).

Id. at 295.

Tex. Pen. Code § 49.04(a), (b).

Tex. Pen. Code § 49.01(2)(A), (B).

This is not to suggest that the State is required to introduce retrograde extrapolation testimony to prove its case. The State is only required to prove that a defendant was intoxicated at the time of driving. Evidence of a particular blood alcohol level may be relevant regardless of whether there is retrograde extrapolation testimony. Stewart v. State , 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). Breath or blood test results can be relied upon, even without retrograde extrapolation testimony, along with other evidence of intoxication to determine whether a particular defendant was intoxicated, as the term is defined, at the time of driving. Id. Moreover, Appellant did not argue on appeal, nor does he argue here, that the evidence was insufficient to establish he was guilty of Class B driving while intoxicated.

Of course, the different definitions of intoxication are purely evidentiary matters; they are not "elements" of the offense of driving while intoxicated. State v. Barbernell , 257 S.W.3d 248, 256 (Tex. Crim. App. 2008). The State is not required to allege a particular definition of intoxication in the charging instrument that it intends to rely on in trial. Id.

Tex. Pen. Code § 49.04(d).

Appellant does not argue that prosecution under the deficiently drafted indictment subjects him to the risk of being prosecuted later for the same crime.

Ramjattansingh , 530 S.W.3d at 263.

Id.

Id. (citations omitted).

497 S.W.3d 574 (Tex. App.-Houston [1st Dist.] 2016, no pet.).

Id. at 579-80.

Id. at 580.

Id.

Id.case-ids="12183978" index="46" url="https://cite.case.law/sw3d/497/574/"> at 586.

46 S.W.3d at 244.

Id.

Id.

Id.

Gollihar v. State , 991 S.W.2d 303, 305 (Tex. App.-Texarkana 1999), rev'd , 46 S.W.3d 243 (Tex. Crim. App. 2001).

991 S.W.2d at 306-07.

Id.

Gollihar , 46 S.W.3d at 252, 256.

Id.

Id.case-ids="11089268" index="57" url="https://cite.case.law/sw3d/46/243/#p257"> at 245, 252.

471 S.W.3d 458 (Tex. Crim. App. 2015).

Id. at 461.

Id. at 466.

Id. at 466.

Id.

Id.case-ids="6837736" index="63" url="https://cite.case.law/sw3d/471/458/"> at 466-67.