COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| EDUARDO FELIPE PACHECO, | § | No. 08-18-00098-CR |
| Appellant, | § | Appeal from |
| v. | § | County Court at Law No. 2 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC# 20170C05989) |

## O P I N I O N

A jury found Appellant Eduardo Pacheco guilty of driving while intoxicated with a blood alcohol concentration greater than 0.15, a Class A misdemeanor. The rub in this case, however, was that while the jury found he was driving while intoxicated, it was never actually asked whether Appellant had a blood alcohol concentration over 0.15. On appeal, Appellant pitches this problem as a material variance between the information and jury charge which in turn renders the evidence insufficient to support his conviction. He also complains that the prosecutor committed various instances of misconduct during jury argument. Because sufficient evidence would support Appellant's conviction for the Class A misdemeanor (including breath test results of 0.173 and

1

0.172), we overrule the issue as raised. We also conclude that Appellant forfeited any claim concerning jury argument error. Accordingly, we affirm the judgment.

## I. BACKGROUND

The State charged Appellant in a three-paragraph information with driving while intoxicated with a blood alcohol concentration over 0.15. *See* TEX.PENAL CODE ANN. § 49.04(a), (d). The first paragraph charged that Appellant operated a motor vehicle in a public place while intoxicated. *See id.* § 49.04(a). The second paragraph charged a Class A misdemeanor because Appellant's blood alcohol concentration level was at least 0.15 at the time the analysis was performed, and the third paragraph asserted that Appellant was previously convicted of driving while intoxicated.[1] *See id.* §§ 49.04(d), 49.09(a).

During jury selection, the State defined intoxication for the venire as not having the normal use of mental or physical faculties, or having an alcohol concentration of 0.08 or greater. Trial commenced with the State reading the information to the jury.[2] During opening statement, the State informed the jury that, on July 13, 2017, Appellant drove while intoxicated and his blood alcohol concentration was greater than 0.15. Appellant's main theory of defense was that law enforcement initially detained him on the evening of his arrest because he was speeding, which was not a sign of intoxication, and his demeanor was explained by gout and medications.

---

[1] Driving while intoxicated with a blood alcohol concentration of 0.08 or more is a Class B misdemeanor. *See* TEX.PENAL CODE ANN. §§49.04(b), 49.01(2)(B). If a person charged with driving while intoxicated has previously been convicted of an offense relating to the operating of a motor vehicle while intoxicated, the charge is enhanced to a Class A misdemeanor with a minimum term of confinement of 30 days. *See* TEX.PENAL CODE ANN. § 49.09(a).

[2] The State did not read the third paragraph of the information that alleged Appellant had a prior conviction, because Appellant stipulated to the trial court that he was convicted of the Class B misdemeanor of driving while intoxicated in El Paso County Criminal Court No. 4, Cause No. 20090C00748, on October 12, 2010.

## A. Evidence of Driving While Intoxicated

The State presented part of its case through El Paso Police Officer Willem Wilkinson, a member of its DWI Task Force. Through Officer Wilkinson, the State introduced a dashcam video from his cruiser that depicted Appellant's arrest. Narrating the dashcam video, Officer Wilkinson testified that he initiated a traffic stop after he witnessed Appellant run a stop sign and speed (traveling 50 mph in a 30 mph zone) at 2 a.m. Officer Wilkinson noted that Appellant's eyes were glassy and he provided a confusing answer concerning where he lived. Based upon that interaction, the time of night, and the area where Appellant was coming from, Officer Wilkinson formed a suspicion that Appellant was intoxicated.

Officer Wilkinson stated that Appellant, who was chewing a large amount of gum, denied drinking alcohol that evening but admitted to taking blood pressure medications and melatonin. Appellant stated that he got off work at 10:30 p.m. and was going out for food. Appellant agreed to perform field sobriety tests, and Officer Wilkinson indicated that Appellant scored six possible clues on the horizontal gaze nystagmus test. The dashcam video depicted that Appellant swayed and was disoriented while Officer Wilkinson administered the test.[3] Although Appellant did not perform the one leg stand test due to a physical condition, the video showed that he did not follow instructions during the demonstration stage of the test. Officer Wilkinson testified that although he did not smell alcohol on Appellant's breath, he decided to arrest Appellant for driving while intoxicated based upon Appellant's moving violations, performance on the horizontal gaze nystagmus test, and overall behavior and appearance.

---

[3] Officer Wilkinson also administered the vertical gaze nystagmus test, which is not a standardized field sobriety test. *See* DWI Detection and Standardized Field Sobriety Testing Instructor Guide (Feb. 2018), https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/documents/sfst_full_instructor_manual_2018.pdf (last visited March 20, 2020). Officer Wilkinson testified that Appellant displayed vertical nystagmus, which he considered an additional indicator that Appellant was intoxicated.

3

Once at the police station, El Paso Police Officer Steven Alvarez, also with the DWI Task Force, testified that he conducted a 25-minute observation period on Appellant prior to administering a breath alcohol test. After Appellant removed the gum from his mouth, Officer Alvarez detected an odor of alcohol emanating from Appellant. Appellant also displayed slurred speech and fell asleep while he was with the Officer. Officer Alvarez indicated that the Intoxilyzer 9000 performed a circuit check prior to and after Appellant's breath test, and it was working properly. Based upon the signs Appellant displayed during the observation period and the results of his breath test, Officer Alvarez concluded that Appellant was intoxicated at the time of his arrest.

El Paso Police Department Technical Supervisor Gustavo Avila testified that Appellant's breath test results were 0.173 and 0.172 grams of alcohol per 210 liters of breath. In his opinion, a person with a 0.172 blood alcohol level could not safely operate a motor vehicle. Technical Supervisor Avila stated that the Intoxilyzer 9000 that performed Appellant's breath test was operational at the time it sampled Appellant's breath, and the melatonin which Appellant claimed to have ingested, would not alter the test results.

Appellant argued that the breath alcohol tests were not reliable because the police did not follow a 15-minute observation protocol before administering the test. *See* 37 TEX.ADMIN.CODE § 19.3(a)(1) (2015) (Tex.Dep't of Pub.Safety, Breath Alcohol Testing Regulations) (requiring an operator to remain in the continuous presence of the subject for at least 15 minutes prior to a breath test to ensure subject does not place any substance in his or her mouth). Appellant argued below that a jail form showed that Appellant was logged in at 3:07 a.m. and the breath test was administered at 3:09 a.m., negating any chance of a 15-minute observation period.

The evidence shaped up like this: Officer Alvarez administered the Intoxilyzer 9000 test. His record showed that Officer Wilkinson delivered Appellant to the observation room at

4

2:45 a.m., and that Officer Alvarez conducted the first breath alcohol test at 3:09 a.m. He also stated that, during the 25 minutes that he observed Appellant, Officer Wilkinson entered Appellant's information into the prison log system. The analytical report, which the Intoxilyzer 9000 created at the time of Appellant's breath tests, corroborated Officer Alvarez's testimony. Technical Supervisor Avila testified that the analytical report indicated that Officer Alvarez followed the proper testing techniques when he administered Appellant's breath alcohol tests.

On cross-examination, Officer Wilkinson also corroborated that Officer Alvarez observed Appellant for at least 15 minutes prior to administering the breath alcohol tests. Officer Wilkinson explained that he made the prisoner log entry of 3:07 a.m., but may have done so because that entry is made whenever he has the opportunity. Officer Wilkinson testified that events in the police station could cause him to ". . . get distracted . . . and [he] will lose track of time and enter [the defendant] in [the prison log] later."

**B. The Jury Charge**

During the jury charge conference, the State requested an instruction defining intoxication as delineated in Texas Penal Code § 49.01(2)(A) (not having the normal use of mental or physical faculties by introduction of alcohol or drugs into the body), and § 49.01(2)(B), (having a blood alcohol concentration of 0.08 or more).[4] *See* TEX.PENAL CODE ANN. § 49.01(2)(A)-(B).

The trial court, however, submitted this single question to the jury:

Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of July, 2017, in El Paso County, Texas, [Appellant], did then and there operate a motor vehicle in a public place in said state and county while

---

[4] Section 49.01(2)(A) defines intoxication as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." TEX.PENAL CODE ANN. § 49.01(2)(A) (referred to as intoxication by "impairment"). Section 49.01(2)(B) defines intoxication as "having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2)(B) (referred to as "per se" intoxication).

intoxicated, then you will find [Appellant] guilty as charged. If you do not so find, or if you have a reasonable doubt thereof, you will find [Appellant] not guilty.

The charge added this definition: "Intoxicated means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." Thus, over the State's objection, the charge omitted an instruction that a person was per se intoxicated at 0.08. And it also omitted, over the State's objection, any question as to whether Appellant's blood alcohol concentration was over 0.15.[5]

Appellant had objected to an earlier version of the charge because it included intoxication by drugs. That reference was removed, and Appellant did not object to the final charge or request any jury instruction.

The jury returned a verdict that found Appellant "guilty as charged in the Information." The trial court sentenced Appellant to a term of one year's incarceration and a $750 fine, but probated the sentence, ordering him to serve 18 months' community supervision.

## II. ISSUES ON APPEAL

Appellant presents seven issues on appeal. He first argues that insufficient evidence supports his conviction because the variance was material between the information and the jury charge. He next raises five issues alleging prosecutorial misconduct during closing argument, and he concludes by arguing that the cumulative error of these instances warrants reversal of his conviction. We address each issue in turn.

---

[5] After the jury retired for deliberation, the trial court announced to the parties that it had read an incorrect jury charge and offered to provide the jury with a corrected charge that included the per se definition of intoxication. The State requested that the trial court provide the instruction, but Appellant objected. The trial court did not send in the corrected instruction.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence was insufficient to sustain his conviction because of a material variance between the offense charged in the information and the offense the jury convicted him of. Specifically, Appellant contends that the trial court instructed the jury it could render a guilty verdict if it found that he did not have the normal use of his mental or physical faculties by reason of introduction of alcohol into the body, a Class B misdemeanor, which was "materially different" than the Class A misdemeanor of driving while having a blood alcohol concentration level of 0.15 or greater that the State charged in the information. Appellant maintains that the variance between the information and the jury instruction deprived him of notice of the offense for which he would be prosecuted. The State maintains that the claim is without merit because a variance can only arise between the information and the evidence presented at trial, and Appellant could not demonstrate a material variance in any event. As the complaint is presented, we agree.[6]

#### A. Controlling Law

To evaluate sufficiency of the evidence in a criminal case, a reviewing court views all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *See Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex.Crim.App. 2018), *citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility of witnesses, and we presume

---

[6] Appellant has not argued that the trial court committed charge error in the classic sense of that issue. That is, charge error is viewed under the two-pronged test from *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (en banc); *see also Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005) (en banc). When there is no objection to the charge, as Appellant failed to make here, the error is only reversible if the charge error caused egregious harm. *Arteaga v. State*, 521 S.W.3d 329, 338 (Tex.Crim.App. 2017) (charge error is egregiously harmful if it affects the very basis of a case, deprives the defendant of a valuable right, or vitally affects a defensive theory). Appellant has not set out the *Almanza* standard of review, nor argued egregious harm from the charge issue. The State in its brief pointed out that Appellant has not urged a classic charge error analysis, and Appellant has not filed a reply brief. Accordingly, we do not analyze the charge here under an *Almanza* charge error analysis.

the jury resolved any conflicts in favor of the verdict. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex.Crim.App. 2014). A court assesses a sufficiency challenge by comparing the evidence presented at trial to the elements of the offense as "defined by the hypothetically correct jury charge for the case." *See Ramjattansingh*, 548 S.W.3d at 546, *quoting Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997) (en banc). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Ramjattansingh*, 548 S.W.3d at 546, *quoting Malik*, 953 S.W.2d at 240. The law as "authorized by the indictment" refers to the statutory elements of the offense as delineated by the charging instrument. *Ramjattansingh*, 548 S.W.3d at 546.

### 1. *The hypothetically correct jury charge for this offense*

For a jury to render a guilty verdict for the offense charged in the information, the State must prove that the defendant was intoxicated while operating a motor vehicle in a public place, and he had an alcohol concentration level of 0.15 or more at the time the analysis was performed. *See* TEX.PENAL CODE ANN. § 49.04(a), (d). As such, the Court of Criminal Appeals indicated that the hypothetically correct jury charge for this offense requires proof of:

- Class B driving while intoxicated, (that is, operating a motor vehicle in a public place while "not having the normal use of mental or physical faculties" by reason of the introduction of alcohol into the body, or "having an alcohol concentration of 0.08 or more"); and

- an "alcohol concentration level of 0.15 or more at the time the analysis was performed."

*Ramjattansingh*, 548 S.W.3d at 548; TEX.PENAL CODE ANN. §§ 49.01(2)(A)-(B); 49.04(a), (d).

8

### 2. *Material and immaterial variances*

A variance occurs when a discrepancy exists between the allegations in the charging instrument and the proof at trial. *See Byrd v. State*, 336 S.W.3d 242, 246 (Tex.Crim.App. 2011). In a variance situation, the State proved that the defendant committed a crime, but proved its commission in a manner that varies from the allegations in the charging instrument. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex.Crim.App. 2001). The Court of Criminal Appeals indicates that variance claims are generally treated as insufficiency of the evidence problems. *See id.* at 247.

Two types of variances may be found in an evidentiary-sufficiency analysis: material and immaterial variances. *See Thomas*, 444 S.W.3d at 8. Immaterial variances do not affect a criminal conviction; thus, the hypothetically correct jury charge does not need to incorporate allegations that give rise to immaterial variances. *See id.*, *citing Gollihar*, 46 S.W.3d at 256 (concluding that an immaterial variance occurred when an indictment alleged the incorrect serial number for a stolen go-cart). A material variance will render evidence insufficient and the conviction infirm. *See Thomas*, 444 S.W.3d at 9. Such a variance is found when the indictment "1) fails to adequately inform the defendant of the charge against him, or 2) subjects the defendant to the risk of being prosecuted later for the same crime." *Ramjattansingh*, 548 S.W.3d at 547, *citing Gollihar*, 46 S.W.3d at 248-49.

### B. Sufficiency Review Does Not Consider the Jury Charge Given at Trial

To the extent that Appellant contends a variance between the trial court's jury charge and information rendered the evidence insufficient to support his conviction, we overrule the issue. As the State indicates, a variance that renders evidence insufficient to support a conviction occurs when there is a discrepancy between the allegations in the indictment and proof at trial. *See*

9

*Gollihar*, 46 S.W.3d at 247. We therefore restrict our evidentiary-sufficiency analysis to these portions of the record. *See id.*

Appellant's brief relies on *Gollihar*, where the Court of Criminal Appeals concluded that the lower court erred by measuring sufficiency of the evidence against the jury charge given at trial. *See* 46 S.W.3d at 257-58. On direct appeal, *Gollihar* claimed that the evidence was insufficient to support his theft conviction because a material variance occurred when the indictment and jury charge alleged a different model number of go-cart than the evidence presented at trial. *See id.* at 244. The court of appeals agreed, finding the evidence insufficient because the State did not prove what was alleged in the jury charge. *See id.* at 244-45. The Court of Criminal Appeals reversed and remanded, holding that (1) the controlling authority, *Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997) (en banc), "flatly rejected use of the jury charge actually given as a means of measuring sufficiency of the evidence," and (2) the variance concerning the model number was not material. *See Gollihar*, 46 S.W.3d at 252, 258, *referencing Malik*, 953 S.W.2d at 240 (announcing that sufficiency of the evidence should be measured by the "elements of the offense as defined by the hypothetically correct jury charge for the case").[7]

As *Gollihar* instructs, a reviewing court does not consider the jury charge given at trial in a sufficiency of the evidence analysis. *See Gollihar*, 46 S.W.3d at 252, 258. While we may conduct a sufficiency review and determine whether a material variance prejudiced Appellant's

---

[7] The other authority that Appellant cites is *Fuller v. State*, where the Court of Criminal Appeals concluded that a variance between the indictment and the proof at trial was immaterial and did not render evidence insufficient to support a conviction. *See* 73 S.W.3d 250, 253-54 (Tex.Crim.App. 2002) (en banc) (noting that the indictment charging "injury to an elderly individual" alleged injury to "Olen M. Fuller," and proof at trial referred to victim as "Mr. Fuller" or "Buddy"), *citing Gollihar*, 46 S.W.3d at 254.

10

rights, this analysis involves measuring the evidence presented at trial against the hypothetically correct jury charge for the offense.[8] *See id.*

## C. A Rational Jury Could Have Found Appellant Guilty of Driving While Intoxicated with a Blood Alcohol Concentration Over 0.15

The information charged that Appellant "did then and there operate a motor vehicle in a public place while [Appellant] was intoxicated." It further alleged that, "at the time of performing an analysis of a specimen of [Appellant's] breath, the analysis showed an alcohol concentration level of 0.15 or more." This language tracks the hypothetically correct jury charge and the Penal Code provision that Appellant was prosecuted under. *See* TEX.PENAL CODE ANN. §§ 49.01(2)(A)-(B), 49.04(a), (d); *Ramjattansingh*, 548 S.W.3d at 548. The information provided Appellant with adequate notice of the charges against him, and the State's evidence concerned only those elements charged. *See Crenshaw v. State*, 378 S.W.3d 460, 465-66 (Tex.Crim.App. 2012) (indicating that an information charging driving while under the influence provides adequate notice when it sets forth the statutory elements provided in Texas Penal Code Section 49.04).

At trial, the State presented evidence that Appellant was intoxicated under both the impairment and per se definitions of driving while intoxicated. *See* TEX.PENAL CODE ANN. § 49.01(2)(A)-(B); *Ramjattansingh*, 548 S.W.3d at 548. A jury could logically infer that Appellant was intoxicated based in part upon evidence of erratic driving, such as running a stop sign and speeding. *See State v. Mechler*, 153 S.W.3d 435, 441 (Tex.Crim.App. 2005) (finding law enforcement officer's testimony that appellant drove erratically and rolled through a stop sign probative of appellant's intoxication). Through Officer Wilkinson, the State presented evidence that Appellant ran a stop sign and traveled approximately 20 miles per hour over the speed limit

---

[8] Citing to *Fuller* and *Gollihar*, Appellant acknowledges in his legal analysis that "courts measure evidentiary sufficiency against the elements of the offense as defined by the hypothetically correct jury charge for the case." *See* TEX.R.APP.P. 38.1(i).

at 2 a.m., in an area where bars were located.  The State introduced a video that corroborated Officer Wilkinson's testimony concerning Appellant's traffic infractions.  Officer Wilkinson also testified that, upon contact, Appellant displayed glossy eyes, a flushed face, and a blank stare.  *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex.Crim.App. 2010) (noting that any "usual indicia of intoxication," including bloodshot eyes, support an inference that the defendant was intoxicated at the time of driving and the time of the blood alcohol test)  Both the dashcam video and Officer Wilkinson provided evidence that Appellant made confusing statements, including that his "physical" address was listed on his driver's license but he lived elsewhere.  When Officer Wilkinson asked Appellant why he was out at 2 a.m., Appellant stated that he was trying to lose weight.

The video also corroborated Officer Wilkinson's testimony that Appellant scored six clues of the horizontal gaze nystagmus field sobriety test.  Appellant swayed forward and backward throughout the test, although Officer Wilkinson instructed him to stand still.  Appellant moved his head to the left and right, tracking the stimulus, although Officer Wilkinson instructed Appellant to hold his head stationary and follow the pen with his eyes only.  *See id.* (indicating that defendant's swaying and inability to follow directions on field sobriety tests permit the fact finder to infer that appellant was intoxicated at the time of driving and the time of the blood alcohol test).[9] The video supported Officer Wilkinson's testimony that Appellant "dozed off" while he was performing the horizontal gaze nystagmus test.  It also recorded that Appellant appeared disoriented and stopped Officer Wilkinson from administering the test twice.

---

[9] While the cited physical actions depicted on the video were not scored clues, they were in contradiction to Officer Wilkinson's directions, and permitted the jury to infer that Appellant was intoxicated. *See Kirsch*, 306 S.W.3d at 745.

Officer Wilkinson next instructed Appellant to stand with his feet together and his arms at his side while he demonstrated the one leg stand test, as recorded on his dashcam video. Appellant instead stood with his legs apart and arms outstretched. Appellant also began the one leg stand test before Officer Wilkinson instructed, although Appellant did not complete the test because of a physical condition. Officer Wilkinson testified that he decided to arrest Appellant for driving while intoxicated based upon the totality of: Appellant's erratic driving, including speeding and running a stop sign, his physical appearance and demeanor, and scoring six clues of the horizontal gaze nystagmus test. *See Melcher*, 153 S.W.3d at 442 (indicating that a law enforcement officer's testimony that appellant failed field sobriety tests and had the smell of alcohol on his breath was probative of appellant's intoxication).

The State presented evidence aside from Officer Wilkinson's testimony and the dashcam video that would permit a rational jury to conclude that Appellant was intoxicated under both the impairment and per se definitions. *See* TEX.PENAL CODE ANN. § 49.01(2)(A)-(B); *Ramjattansingh*, 548 S.W.3d at 548. Officer Alvarez testified that, while he observed Appellant, the odor of alcohol emanated from him, he spoke with slurred speech, and was "falling asleep." *See Kirsch*, 306 S.W.3d at 745-46 (finding evidence that defendant drove 20 miles per hour over the speed limit, had the odor of alcohol on his breath and slurred speech, to support an inference that the defendant was intoxicated at the time of driving).

To support a prosecution for a Class A misdemeanor of driving while intoxicated, the State presented evidence that Appellant's blood alcohol level was greater than 0.15 at the time of the analysis. *See* TEX.PENAL CODE ANN. §§ 49.01(2)(A)-(B); 49.04(d); *Ramjattansingh*, 548 S.W.3d at 548. Through Technical Supervisor Avila, the State introduced the results of two Intoxilyzer 9000 breath tests indicating that Appellant registered 0.173 and 0.172 grams of alcohol per

13

210 liters of breath at the time of the analyses. Technical Supervisor Avila testified that the Intoxilyzer 9000 that was used to test Appellant's blood alcohol was calibrated and functioning properly prior to and after Appellant's breath sample, and was operational at the time it sampled Appellant's breath. He also opined that a person with a blood alcohol level of 0.172 would have lost the normal use of his mental and physical faculties and could not safely operate a motor vehicle.[10] As such, Appellant's Intoxilyzer 9000 breath test results tended to make it more probable that he was intoxicated at the time he drove under both the impaired and per se theories of intoxication. *See Crenshaw*, 378 S.W.3d at 467-68 (indicating that blood alcohol concentration evidence is relevant to the impaired and per se theories of intoxication); *Melcher*, 153 S.W.3d at 440.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence presented at trial was sufficient to support Appellant's conviction for the Class A misdemeanor of driving while intoxicated with an alcohol concentration level of 0.15 or more. *See Ramjattansingh*, 548 S.W.3d at 546. The State presented evidence that supported the elements of the hypothetically correct jury charge and the allegations in the information. *See id.* The record does not demonstrate that the information (1) failed to adequately inform Appellant of the charge against him, or (2) subjected him to the risk of being prosecuted later for the same crime. *See id.* at 547, *citing Gollihar*, 46 S.W.3d at 248-49. As such, no material variance existed between the information and the proof at trial. *See Ramjattansingh*, 546 S.W.3d at 547. We overrule Appellant's first issue.

---

[10] Technical Supervisor Avila, who completed a bachelor's degree in biological sciences and a Ph.D. in chemistry with an emphasis in biochemistry, testified that he oversaw the alcohol testing programs in El Paso County, including the instrumentation and records that operators use. Technical Supervisor Avila's Texas Department of Public Safety certification required he attend "courses relating to the physiology and the effects of alcohol on a person's ability to operate a motor vehicle . . .."

14

## IV. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT

In his next five issues, Appellant alleges that the prosecutor committed misconduct during closing argument. Specifically, he maintains that the prosecutor: violated his due process rights by stating that "intoxicated" and "impaired" had the same meaning (Issue Two); vouched for the credibility of Officers Wilkinson and Alvarez (Issues Three and Four); committed egregious error by arguing that defense counsel's job was to "inflate those puzzle pieces that are missing until we lose all sense of what's happening here" (Issue Five); and commented on his failure to testify by arguing that the evidence contradicted his assertion that he did not drink (Issue Six). All of these instances share one common feature: there was no objection made to them below. We agree with the State that these issues are procedurally defaulted.

### A. Controlling Law

The purpose of closing argument is to facilitate the jury to properly analyze the evidence presented at trial so that it may reach a reasonable and just conclusion based upon the evidence alone, and not upon a fact not admitted into evidence. *See Milton v. State*, 572 S.W.3d 234, 239 (Tex.Crim.App. 2019). There are four proper areas of jury argument: "(1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to an argument of opposing counsel, and (4) plea for law enforcement." *See id.* Counsel is permitted wide latitude in drawing inferences from the evidence so long as those inferences are fair, reasonable, legitimate, and offered in good faith. *See Shannon v. State*, 942 S.W.2d 591, 597 (Tex.Crim.App. 1996). The bounds of proper closing argument are generally left to the discretion of the trial court. *See Milton*, 572 S.W.3d at 240.

Rights are usually forfeited by the failure to invoke them. *See Hernandez v. State*, 538 S.W.3d 619, 622 (Tex.Crim.App. 2018). "The right to a trial untainted by improper jury argument

is forfeitable." *Id.*, *citing Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996) (en banc). In order to complain on appeal about an improper jury argument, the defendant must make a timely objection and obtain an adverse ruling from the trial court. *See Cockrell*, 933 S.W.2d at 89 (holding that a "defendant's failure to object to a jury argument . . . forfeits his right to complain about the argument on appeal"). Even an inflammatory jury argument is forfeited if a defendant does not pursue an objection to an adverse ruling. *See Hernandez*, 538 S.W.3d at 622-23; *see also Estrada v. State*, 313 S.W.3d 274, 303 (Tex.Crim.App. 2010) (indicating that the defendant must move for mistrial to preserve error if the State's argument was so egregious that no instruction to disregard could cure the error).

### B. Appellant's Specific Allegations of Error in Closing Argument

In his second issue, Appellant claims that the prosecutor misstated the law and invoked his personal status as the Government's attorney when she stated:

> Because the definition of impaired means to lose your mental and physical faculties. That is being impaired. That's a version of impairment. There's no--it's nothing different. It's the same testimony, it's just using a different word.

Appellant next argues that the prosecutor impermissibly vouched for the credibility of Officers Wilkinson and Alvarez by stating that, "we have no evidence presented to question that [the Officers observed the 15-minute observation period]. We have no reason to question the sincerity of that testimony. Nothing's been presented to refute that." In his fourth issue, Appellant argues that the prosecutor impermissibly vouched for the credibility of Technical Supervisor Avila by stating that he "knows more about that science than I will ever know and he testified we can trust these results. You heard that from an expert, from somebody more learned than I am."

As his fifth issue, Appellant maintains that the prosecutor impermissibly suggested that trial counsel's role was to confuse the jury when she argued, "So the [d]efense's job is to inflate

those puzzle pieces that are missing until we lose all sense of what's happening here . . . . It's the State's burden to prove beyond a reasonable doubt." Appellant finally contends that the prosecutor impermissibly commented on his failure to testify when she argued that Appellant self-reported conflicting information in his medical records concerning whether or not he drank alcohol. The prosecutor continued to emphasize Appellant's failure to testify when she argued that, although Appellant denied that he drank anything on the night he was arrested, his blood alcohol level was 0.172. "So which is it? Did he not have anything to drink or did he?"

The record demonstrates that Appellant forfeited the complaints of improper jury argument raised in Issues Two through Six, because trial counsel did not timely object to any of the comments.[11] *See* TEX.R.APP.P. 33.1; *Hernandez*, 538 S.W.3d at 622-23; *Castruita v. State*, 584 S.W.3d 88, 112 (Tex.App.--El Paso 2018, pet. ref'd).

As such, we overrule Issues Two through Six as procedurally defaulted.

## V. CUMULATIVE ERROR

In his seventh issue, Appellant argues that the cumulative effect of the errors complained of in Issues One through Six warrant reversal of his conviction. Appellant did not demonstrate that the trial court erred in his six preceding issues. As such, no error exists to cumulate. *See Jenkins v. State*, 493 S.W.3d 583, 613 (Tex.Crim.App. 2016), *citing Gamboa v. State*, 296 S.W.3d 574, 585 (Tex.Crim.App. 2009) (indicating that the Court of Criminal Appeals has never found that non-errors may cumulatively cause error). To the extent that Appellant alleges cumulative harm from every issue enumerated in his opening brief, we made no conclusion that the trial court erred with respect to any issue raised. *See id.* As such, we overrule the issue.

---

[11] Trial counsel did not raise any objections during closing argument.

17

Having overruled all of Appellant's issues on appeal, we affirm the trial court's judgment adjudicating guilt.

JEFF ALLEY, Chief Justice

April 23, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)