

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00067-CR

_____

MARK ZIEGLER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 3
Denton County, Texas
Trial Court No. CR-2018-0392-C

---

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

A jury convicted Mark Ziegler of driving while intoxicated with an alcohol concentration of 0.15 or more. *See* Tex. Penal Code Ann. § 49.04(a), (d). The trial court sentenced Ziegler to a $200 fine and 270 days in jail and probated the jail sentence for 16 months. In one issue, Ziegler argues that the trial court erred during final arguments when it twice ruled that the State did not have to prove that Ziegler was driving while intoxicated but, instead, ruled that the State had to prove only that Ziegler's blood-alcohol concentration in a blood sample taken shortly after his arrest was greater than 0.15 when later analyzed. We disagree.

We overrule Ziegler's issue because the record shows that the State both proved and argued that Ziegler drove a vehicle while not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, which is a Class B misdemeanor, and that based on a blood sample taken a few hours after Ziegler's arrest, Ziegler also had an alcohol-concentration level of 0.15 or more when the sample was analyzed, which enhanced the offense to a Class A misdemeanor. *See id.* § 49.04(a), (b), (d). The State never argued and thus the trial court never approved the proposition that all the State had to prove was that Ziegler had an alcohol concentration greater than 0.15 when his blood was taken and analyzed after Ziegler's arrest.

## The statutes

The statute within Chapter 49 of the Penal Code addressing the offense of driving while intoxicated with an alcohol concentration of 0.15 or more provides:

(a)     A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.

(b)     Except as provided by Subsections (c) and (d) and Section 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.

(c) . . . .

(d)     If it is shown on the trial of an offense under this section that an analysis of a specimen of the person's blood, breath, or urine showed an alcohol concentration level of 0.15 or more at the time the analysis was performed, the offense is a Class A misdemeanor.

*Id.*

"Intoxicated" means

(A)     not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B)     having an alcohol concentration of 0.08 or more.

*Id.* § 49.01(2)(A), (B).

## The statutes construed

In describing the hypothetically correct jury charge for the offense of driving while intoxicated with an alcohol concentration of 0.15 or more, the Texas Court of Criminal Appeals has written:

The hypothetically correct jury charge for the Class A misdemeanor alleged in this case requires proof of

- Class B driving while intoxicated (that is, operating a motor vehicle in a public place while "not having the normal use of mental or physical faculties" by reason of the introduction of alcohol into the body, or "having an alcohol concentration of 0.08 or more"); and

- "an alcohol concentration level of 0.15 or more at the time the analysis was performed"

but not

- "an alcohol concentration level of 0.15 or more at or near the time of the commission of the offense[.]"

*Ramjattansingh v. State*, 548 S.W.3d 540, 548 (Tex. Crim. App. 2018). Thus, the State must prove both Section 49.04(a) (intoxicated while driving) and Section 49.04(d) (alcohol concentration level of 0.15 or more when analyzed). Proving only Section 49.04(d) is not enough.

## Ziegler's arguments

But Ziegler argues that the State twice asserted—and the trial court twice agreed—that the State's burden was limited to proving only Section 49.04(d). He relies on two exchanges during final arguments to support his contention.

## A.    First instance

The first instance occurred while Ziegler's counsel was arguing:

[DEFENSE COUNSEL]: And I asked him, can you tell this jury with any degree of certainty what his blood score was at the time of driving? .08 or .15 or whatever? In order to even get to the .15, because that's the

4

time of testing, which makes no sense to me, but that's the law, you still have to believe there's a .08 at the time of driving.

[PROSECUTOR]: Judge, I'm going to object to misstatement of the law.

[DEFENSE COUNSEL]: The jury charge is—

THE COURT: Hold on one second.

Sustained. The jury will disregard counsel's last statement.

[DEFENSE COUNSEL]: Your Honor, may I argue briefly and not have it count against my time?

THE COURT: Yes. What's your response?

[DEFENSE COUNSEL]: The first part of the jury charge on page 3 of 6 it says, ["]The defendant, Mark Alan Ziegler, stands charged by information with a Class A misdemeanor offense of operating a motor vehicle in a public place on or about the 13th day of October [2016] in Denton County, Texas, while intoxicated, and at that time [of] performing an . . . analysis of [a] specimen of defendant's blood.["] Goes down below, [""]Intoxicated['] means not having the normal use of mental or physical faculties by reason of the introduction of alcohol in the defendant's body or said defendant had an alcohol concentration of at least .08 or more.["]

Your jury charge to the jury says that they have to find that he was intoxicated, which means a .08 at the time of driving.

THE COURT: I'll sustain the prosecutor's objection. Jury will disregard counsel's last statement.

As we understand Ziegler's argument, if the State did not have to prove an alcohol level of 0.08 at the time he was driving, all that was left for the State to prove was that he had an alcohol level of 0.15 or more when he gave a blood sample hours later.

5

Underscoring the concern, Ziegler next points to the State's reply argument, which appears to take exactly that position.

**B.    Second instance**

The second instance occurred while the prosecutor was arguing:

[PROSECUTOR]: We showed you that when Terry Robinson analyzed that blood days later after it was taken, that it showed a .216, well above a .15. And we—it's much higher than a .08 that's the per se limit in Texas.

It's not our job to show you that he was at a .08 at the time of driving. We don't have to prove that to you. We have to show that he was above a .15—

[DEFENSE COUNSEL]: And I object. That's an improper statement of the law.

THE COURT: Overruled.

[PROSECUTOR]: There'[re] two separate offenses; Class A DWI and Class B DWI. This is a Class A DWI because he's above a .15. All we have to show is that it's a .15 at the time of analysis. We've done that.

[DEFENSE COUNSEL]: Your Honor, I would ask—so I'm not interrupting the prosecutor, I would ask for a running objection in that regard.

THE COURT: Granted.

**Discussion**

At first blush, Ziegler appears to be correct. The State appears to have argued—and the trial court appears to have agreed—that the State's burden was limited to proving only Section 49.04(d) (which is of course incorrect). Ultimately though, the record does not bear this out.

6

Proper jury arguments generally (1) summarize the evidence presented at trial, (2) draw reasonable deductions from that evidence, (3) answer opposing counsel's argument, or (4) plead for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Acosta v. State*, 411 S.W.3d 76, 93 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Arguments that misstate the law or contradict the court's charge are improper. *Lopez v. State*, 582 S.W.3d 377, 398 (Tex. App.—San Antonio 2018, pet. ref'd). When determining an argument's propriety, we consider it contextually and in light of the entire record. *See McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989); *Acosta*, 411 S.W.3d at 93.

After reviewing the record and placing the trial court's rulings in context, we hold that the trial court did not err in either instance.

## A.    Voir dire

Before voir dire, the parties and the trial court treated Section 49.04(d) as a punishment enhancement and not as an element of the offense. Consistent with that understanding, the prosecutor verified that he was not to read the Section 49.04(d) portion when later reading the indictment to the jury.

And during voir dire, when the prosecutor discussed intoxication with the venire members, he focused primarily on the first statutory definition—not having the normal use of mental or physical faculties due to alcohol—and distinguished it from the second and alternative statutory definition—an alcohol concentration of 0.08 or more—"that most people associate with DWI." *See* Tex. Penal Code Ann.

7

§ 49.01(2)(A), (B). The prosecutor then had the venire members themselves illustrate the difference. One venire member volunteered that after one drink, his wife would lose the normal use of her mental or physical faculties despite probably not having an alcohol concentration of 0.08 or more. Another venire member acknowledged having a brother who could have 12 drinks, could have an alcohol concentration of 0.08 or more, but would still "seem[] pretty good" mentally and physically. When asked if either the wife or the brother should be driving, the latter venire member replied, "Neither one." The prosecutor closed his intoxication discussion by acknowledging that people were more familiar with the alcohol concentration of 0.08 or more but that the State could prove intoxication by another means—by showing the loss of the normal use of the defendant's mental and physical faculties:

> Now, when we're talking about .08, that's the per se limit, so—for everyone. If you're above a .08, you are per se intoxicated in the [S]tate of Texas. That applies for everyone. That's for Mr. [Venire Member], that's me, that's the Judge, that's everyone here.
>
> And so that's what most people associate with DWI, but as I just described and kind of let y'all know, you can also have loss of normal use and loss of mental and physical faculties.

After defense counsel conducted his voir dire, the trial court recessed the proceedings so that the parties could make their preemptory strikes. Up until this point, the case was proceeding on the assumption that the State would not prove up Section 49.04(d) until a trial on punishment.

8

But when the proceedings went back on the record, the trial court told the parties that it had rethought Section 49.04(d) and had decided that Section 49.04(d) constituted an element of the offense. Neither side objected to the prosecutor's reading that portion of the indictment when arraigning Ziegler before the jury. The court seated and swore in the jury, dismissed the remaining venire members, and recessed the proceedings for lunch.

After the lunch break, when trial resumed outside the jury's presence, the parties and the trial court again discussed which portions of the indictment should be read to the jury. The State sided with Section 49.04(d)'s being an element of the offense but deferred to the judge on whether to read that portion to the jury. Ziegler argued that the Section 49.04(d) portion was an enhancement and should not be read. The trial court overruled Ziegler's objection and instructed the prosecutor to include the Section 49.04(d) allegations when reading the indictment. The prosecutor complied.

From the voir dire, the only means of proving intoxication discussed with the venire were those set out in Section 49.01(2)(A) and (B)—not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body or having an alcohol concentration of 0.08 or more. *See id.* Because the State initially understood Section 49.04(d) to be an enhancement, it could not have intended to prove it up during the guilt portion of the trial. But now that the court had ruled that Section 49.04(d) was an element of the offense, it would have to. *See Van Do v. State,*

No. 14-18-00600-CR, 2020 WL 1619995, at *5–8 (Tex. App.—Houston [14th Dist.] Apr. 2, 2020, pet. filed) (reversing conviction under Section 49.04(d) when the jury did not decide that issue during the trial on guilt and when the trial court decided it during the trial on punishment).

**B. Trial**

**1. Evidence**

Officer Garrett Volz stopped Ziegler around 3:30 a.m. on October 13, 2016, because Ziegler was driving down the road on the rim of one wheel and with the trunk of his vehicle fully open. Sparks flying from Ziegler's driving on the rim caught Officer Volz's attention. After stopping Ziegler, Officer Volz called Senior Corporal Angelo Dragija to perform the standard field-sobriety tests.

When Corporal Dragija arrived about 15 minutes later, he observed that Ziegler had glassy eyes, swayed slightly, hesitated when walking, and smelled "moderate[ly]" of alcohol. Although Ziegler hesitated a bit when talking, his speech was not slurred. Ziegler admitted having had at least ten drinks and said that "he had a problem," which Corporal Dragija took to mean that he had a problem with alcohol, and that "he needed help." Ziegler failed two standard field-sobriety tests—the horizontal-gaze-nystagmus and the walk-and-turn tests—and was not able to complete the third test, the one-legged stand. Corporal Dragija testified that he thought that Ziegler had lost the normal use of his mental and physical faculties. When cross-examined, Corporal Dragija acknowledged that at the scene he had told Ziegler that Ziegler's

10

speech was good and that Ziegler "looked pretty good" and was "holding it pretty well."

At 6:05 a.m., about two hours after being arrested, Ziegler voluntarily provided a blood sample. Terry Robinson, a toxicology chemist, performed a blood analysis four days later, on October 17, 2016. The toxicology report showed that Ziegler had a blood-alcohol level of 0.216 at the time of the draw.[1]

During trial, Robinson acknowledged that he could not say what Ziegler's alcohol concentration had been at the time Ziegler was driving or when the officers arrested him. Robinson acknowledged that the prosecutor had not even asked him to attempt a retrograde extrapolation. In the face of such admissions, defense counsel asked, "This isn't [a charge of] intoxicated while getting your blood drawn at the police station. This is a driving while intoxicated case?" And Robinson responded, "That's correct."

Robinson provided the jury with other potentially helpful observations. For example, given the time of the stop and the time of the draw, he thought that the blood-alcohol concentration had already peaked and was coming down, but he cautioned that he could never know someone's blood-alcohol content at the time of driving: "Through this process that we've been discussing, it's possible for me to give an estimate, but I can never, regardless of how much information I'm given, say with

_____

[1]The report is dated October 25, 2016.

scientific certainty that this person based on this information was at or above a 0.08 at the time of driving." He even acknowledged that it was possible for a person with a 0.216 at 6:05 a.m. to have been below 0.08 at 3:30 a.m. For that scenario to occur, he explained that a person would have to drink a lot of alcohol shortly before the stop. Alcohol is not immediately absorbed, and while still in the stomach, the alcohol is not yet distributed and thus does not affect the person's faculties.

After the State rested and closed, it therefore had no evidence showing that Ziegler had driven a vehicle while having an alcohol concentration of 0.08 or more. *See* Tex. Penal Code Ann. § 49.01(2)(B). On the other hand, the State had presented a great deal of evidence to show (1) that Ziegler did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body and (2) that when a blood sample was later taken and analyzed, Ziegler's alcohol concentration level was 0.15 or more.

## 2. Evening charge conference

After both parties closed and the jury had left for the day, the trial court informed the parties that it was going to submit Section 49.04(a) to the jury, and if— and only if—the jury found Ziegler guilty of that, the court was going to ask the jury to answer a special issue on Section 49.04(d):

> THE COURT: Okay. As I stated earlier in the day, I'm not 100 percent sure if I'm making the right decision here, but that's . . . what I think we need to do. There needs to be some sort of determination by the jury about the test, but also as we discussed off the record with [defense counsel] and [the prosecutor], that clearly there is a scenario here where

12

[the defendant is] not guilty of DWI, even though [the State] provided the test.

And I think that would be a way to handle it and get some sort of decision from the jury. And, of course, if they find him guilty of DWI but find not true to the .15, then we're looking at a penalty range of a Class B DWI not a Class A. And, of course, if they find guilty and find true, we're looking at Class A range.

That's my understanding of the law, and unless there are any objections to that tonight that we need to discuss, I will give you something written in the morning.

Any objection from the defense on that?

[DEFENSE COUNSEL]: No, sir.

THE COURT: State?

[PROSECUTOR]: None from the State, Judge.

The trial court was thus aware that despite the test results, Ziegler could theoretically be found not guilty of any offense.

### 3. Next morning charge conference

But when trial resumed the next morning, the trial court indicated that it had changed course: it was not going to require the jury to find the lesser offense first and only then have the jury address whether Ziegler had committed the greater offense. Instead, the charge would first have the jury decide whether Ziegler had committed the greater offense, and only if the jury found Ziegler not guilty of that would the jury address whether Ziegler had committed the lesser offense:

THE COURT: All right. . . . We've been here off the record for a few minutes going over the new charge. Pretty much everything I said

13

yesterday before we broke is out. We have a new charge coming in and instead of going with the special issue, we're going with less[e]rs.

State, do you have any issues with the charge?

[PROSECUTOR]: No, Judge. No objection to this charge.

THE COURT: [Defense counsel], any objections?

[DEFENSE COUNSEL]: No objections to the charge, Your Honor.

## 4. The charge

The charge provided that to find Ziegler guilty of the charged offense, that is, the Section 49.04(d) offense, it had to find that Ziegler drove a vehicle while intoxicated, with "intoxicated" defined, and also find that Ziegler ran afoul of Section 49.04(d):

Our law provides that a person commits the offense if the person is intoxicated while operating a motor vehicle in a public place.

. . . .

"Intoxicated," means not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the defendant's body or said defendant had an alcohol concentration of at least 0.08 or more.

The term "alcohol concentration[,]" as used in this charge, means the number of grams of alcohol per 210 liters of breath; 100 milliliters of blood; or 67 milliliters of urine.

A "public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets and highways.

Now, therefore, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of October 2016, the

14

defendant, MARK ALAN ZIEGLER, did then and there operate a motor vehicle in a public place in Denton County, Texas, while intoxicated, and that at the time of performing an analysis of a specimen of the defendant's blood, the analysis showed an alcohol concentration of 0.15 or more[,] you will find the defendant guilty as charged in the Information.

If you do not so find[,] then you will next consider the lesser-included misdemeanor offense of Class B driving while intoxicated.

Now, therefore, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of October 2016, the defendant, MARK ALAN ZIEGLER, did then and there operate a motor vehicle in a public place in Denton County, Texas, while intoxicated, you will find the defendant guilty of the lesser offense of driving while intoxicated.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt as to any element of the offense charged or any element of the lesser-included offense, you will acquit the defendant and say by your verdict not guilty.

As noted, neither party objected to the charge.

### 5. Final Arguments

#### a. The State's argument

With this charge in place, the State and Ziegler proceeded to final arguments. In its opening, the State argued intoxication in terms of a person's not having the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body—an unnecessary argument if the State was truly contending that all it needed to prove was that Ziegler's alcohol concentration level exceeded 0.15 when he gave his blood sample two hours after his arrest and when Robinson analyzed the sample several days later. The State also argued that Ziegler's 0.216 alcohol

concentration proved the aggravating element—which was the only way to prove the greater offense under Section 49.04(d):

> [PROSECUTOR]: So thinking back to yesterday, we heard a lot of evidence about intoxication. And so when you're examining the evidence, I want you to rely on your common sense. You heard in the jury charge, as a juror, you can use your common sense. This courtroom, the Court of law, is not a place where you check your common sense at the door when you walk in, especially as a juror.
>
> *So think about who is probably one of the best people to determine if someone is too intoxicated to drive? It's the person. It's the individual. We ourselves -- we know ourselves better than anyone else. We know our experience with alcohol, we know our tolerance, we know how alcohol affects us. We essentially know when we're too intoxicated to drive.*
>
> *If you remember back to the video that we saw, Mr. Ziegler tells the officers in the beginning, ["]I've had too much to drink. I've had over 10 drinks, beers and shots. I have a problem.["]*
>
> And what he said is consistent with the rest of the evidence in this case. The statements are consistent with the blood analysis, his BAC [blood-alcohol content] being a .216. It's consistent with the officers conducting a DWI investigation and determining that he's too intoxicated to drive. And the statements are consistent with someone getting behind the wheel and cruising along with the trunk wide open and on a flat tire driving on the rim.
>
> It all lines up in this case. And in a moment, [my co-counsel] will stand before you, and he'll get more in-depth with the evidence in this case, but when he's talking about the intoxication, I want to remind you to keep your common sense in mind when looking over everything. And when you do so, I have all the confidence in the world that you'll find the defendant is guilty of driving while intoxicated with a .15 blood alcohol concentration. [Emphasis added.]

## b.     Ziegler's argument, and the State's objection

In contrast, defense counsel argued both the greater and lesser offenses strictly in terms of blood-alcohol content. Because the State had never sought to prove the

16

lesser offense by Ziegler's blood-alcohol content at the time that he was driving, it

objected:

> [DEFENSE COUNSEL]: And I asked him, can you tell this jury with any degree of certainty what his blood score was at the time of driving? .08 or .15 or whatever? In order to even get to the .15, because that's the time of testing, which makes no sense to me, but that's the law, you still have to believe there's a .08 at the time of driving.
>
> [PROSECUTOR]: Judge, I'm going to object to misstatement of the law.
>
> [DEFENSE COUNSEL]: The jury charge is—
>
> THE COURT: Hold on one second.
>
> Sustained. The jury will disregard counsel's last statement.
>
> [DEFENSE COUNSEL]: Your Honor, may I argue briefly and not have it count against my time?
>
> THE COURT: Yes. What's your response?
>
> [DEFENSE COUNSEL]: The first part of the jury charge on page 3 of 6 it says, ["]The defendant, Mark Alan Ziegler, stands charged by information with a Class A misdemeanor offense of operating a motor vehicle in a public place on or about the 13th day of October [2016] in Denton County, Texas, while intoxicated, and at that time [of] performing an . . . analysis of [a] specimen of defendant's blood.["] Goes down below, [""]Intoxicated['] means not having the normal use of mental or physical faculties by reason of the introduction of alcohol in the defendant's body or said defendant had an alcohol concentration of at least .08 or more.["]
>
> Your jury charge to the jury says that they have to find that he was intoxicated, which means a .08 at the time of driving.
>
> THE COURT: I'll sustain the prosecutor's objection. Jury will disregard counsel's last statement.

### c.     The State's reply, and Ziegler's objection

The State's rebuttal argument prompted a similar exchange:

[PROSECUTOR]: You look at evidence in the totality. You put it all together, you look at it, you use your common sense, and then you go back there and make a decision, right?

*So let's talk about what you saw just briefly on intoxication.* Officer Dragija, who's now in the Gang Unit, has been out of the DWI Unit for over a couple years now told you that at the time when he did this investigation, he was called out because he was the one that was available to come out and do the DWI investigation, and *he detected a moderate odor of alcohol, a slight sway, no slur, which is what we saw in the video. He's not trying to make things up. He's not trying to pad his results. He's being a good officer, doing his job.*

*The defendant made admissions that he was drinking on Lower Greenville from 8:00 p.m. and stopped at 2:00 a.m. He had Miller Lites and shots in excess of 10 drinks. He told the officers, ["]I have a problem, I need help.["]*

He asked the officers for a PI [public intoxication] because it was going to affect his career, right? And the officers can't do that. Just like when you go back there to deliberate, you have to follow the law, right? We can't just give him a pass on this, even though it's been two-and-a-half years.

*You saw the SFSTs [standard field-sobriety tests]. Six clues on the HGN, three on the walk-and-turn, and one on the one-legged stand.* And then a .216 lab result at the time of the analysis, and that's what the law requires. Under—in your jury charge on the third page on the top paragraph, we go through the elements that we proved, the date, who the defendant is, it's in Denton County, and while intoxicated and at the time of performing an analysis of a specimen of the defendant's blood, the analysis showed an alcohol concentration of .15 or more. That's what we did.

We showed you that when Terry Robinson analyzed that blood days later after it was taken, that it showed a .216, well above a .15. And we – it's much higher than a .08 that's the per se limit in Texas.

It's not our job to show you that he was at a .08 at the time of driving. We don't have to prove that to you. We have to show that he was above a .15—

[DEFENSE COUNSEL]: And I object. That's an improper statement of the law.

THE COURT: Overruled.

[PROSECUTOR]: There's two separate offenses; Class A DWI and Class B DWI. This is a Class A DWI because he's above a .15. All we have to show is that it's a .15 at the time of analysis. We've done that.

[DEFENSE COUNSEL]: Your Honor, I would ask—so I'm not interrupting the prosecutor, I would ask for a running objection in that regard.

THE COURT: Granted. [Emphasis added.]

With Ziegler's running objection in place, the State continued to argue "intoxication" for the lesser offense and the alcohol-concentration level for the greater offense:

[THE PROSECUTOR]: And when it comes down to it, ladies and gentlemen, use your common sense, you look at all the evidence together[,] and in this case, really, I don't even think this is a real close call. Because I think you can see that video alone by itself and determine *this guy's lost the normal use of his mental and physical faculties driving down the road on the rim with the trunk up and all the statements that he made to the officers.*

But then the officer went the extra step and got the blood to present to you. And it all lines up. We all know people handle alcohol differently.

. . . .

And it's your duty, the oath you took to follow the law and apply the facts of the law. And when you do that, the only reasonable result when you go to the verdict page, which is the final page in your jury charge, is the middle option which says, ["W]e, the jury, find the

19

defendant, Mark Alan Ziegler, guilty of the Class A offense of driving while intoxicated with an alcohol concentration of 0.15 or more as alleged in the information,["] because that is what he is guilty of.

And, ladies and gentlemen, I'm going to ask you to go back there, find him guilty of DWI with an alcohol concentration of .15 or more at the time of the analysis, and I appreciate your time. [Emphasis added.]

## C. Holding

The trial court did not err. The trial court properly sustained the State's objection to Ziegler's argument that the State had to prove that Ziegler had a 0.08 blood-alcohol content when driving. That was one way, but that was not the only way. *See* Tex. Penal Code Ann. § 49.01(2)(A), (B). And for the same reason, the trial court properly overruled Ziegler's later objection to the State's assertion that it did *not* have to prove that Ziegler had an 0.08 alcohol content when driving. *See id.* On this record, the State was attempting to prove the lesser offense by showing that Ziegler was driving while not having the normal use of his mental and physical faculties by the introduction of alcohol into his body and that Ziegler was guilty of the greater offense based on the later blood draw and the 0.216 result. *See id.* §§ 49.01(2)(A), 49.04(a), (d); *see also Johnson v. State*, No. 02-17-00120-CR, 2018 WL 2344654 at *2–3 (Tex. App.—Fort Worth May 24, 2018, no pet.) (mem. op., not designated for publication). We overrule Ziegler's issue.

## Conclusion

Having overruled Ziegler's issue, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: September 3, 2020