**Affirmed and Memorandum Opinion filed October 22, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00084-CR
### NO. 14-23-00085-CR

---

### WENJIN ZHU, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 482nd District Court
### Harris County, Texas
### Trial Court Cause Nos. 1643919 & 1643330

---

## MEMORANDUM OPINION

Appellant Wenjin Zhu appeals his convictions for sexual assault in case numbers 14-23-00084-CR (trial court cause number 1643919) and 14-23-00085-CR (trial court cause number 1643330). He contends the evidence is legally insufficient to support his convictions. We affirm.

### BACKGROUND

Appellant was charged with two offenses of sexual assault committed

against two different complainants, Emma and Fiona.[1]  A consolidated bench trial was held, and the trial court found Appellant guilty in both cases.  The following recitation of facts is based on the evidence presented at Appellant's trial.

*Complainant Emma*

Emma testified that on August 19, 2019, she made an appointment for a massage at a Houston massage establishment.  She stated that she frequently got massages as "an outlet of just everyday obstacles."  Because her regular masseuse was unavailable, an employee suggested Appellant and reassured her that "he would be a good masseuse."  Emma arrived at the massage establishment shortly before her appointment.  As she was checking in, Appellant greeted her in the lobby and escorted her to the massage room.  Appellant left the room and Emma disrobed, leaving her underwear on; she laid face down on the massage table with a blanket covering her body.  Appellant reentered the room with Emma's permission.

The massage began normally, and Emma fell asleep because she was tired. Emma was awoken by "rough hands" in her vaginal area.  She testified that she woke up because Appellant's hands "were inside" her vagina and "his hands were irritating [her] on the inside."  As soon as Emma realized what was happening, she said, "Stop, like no," and Appellant "nervously said:  Okay, okay, okay." Appellant then went to retrieve hot stones.  Appellant "was fumbling, but then placed" the hot stones on her back, sliding one in her buttocks.  Emma loudly protested once again and Appellant said, "okay, okay," removed the stones, and aggressively told her to turn over.  She testified that Appellant seemed aware that his actions were wrong, describing his demeanor as acknowledging his wrongful behavior.  She stated his "demeanor, after he woke me up, he knew — by every

___

[1] We use a pseudonym for the complainants to protect their privacy.

next move, that he knew it was wrong." She stated that she did not consent to any vaginal touching or penetration during the massage.

Emma testified that she was in shock, and it took her a few minutes to get up and get dressed once Appellant had left the room. She went to the front desk, inquired if there were cameras in the massage rooms, paid for the massage, and even left a tip for Appellant because he was standing at the door, and she was scared of Appellant and did not want him to know she was unhappy. After Emma left, she called her brother, who is a police officer, and a friend before contacting the Houston Police Department ("HPD") to report the incident. Emma later went to the hospital for a sexual assault nurse exam ("SANE exam").

*Detective Baker*

Detective Kamesha Baker, who investigated the incident, testified that the SANE exam did not show any male DNA, and Emma had no visible injuries to her anogenital region. Detective Baker noted that it is common to not "see a male DNA result" in digital penetration cases. She also noted that it is common in sexual assault cases to not have injuries to genitals.

*Complainant Fiona*

Fiona testified that two days after the incident with Emma, she booked an appointment with Appellant as part of an undercover operation to conduct "a compliance check." Fiona wore civilian clothes and was equipped with a recording device; other police officers were in the parking lot in undercover vehicles waiting for a "bust signal" in case Fiona felt threatened. The employees of the massage establishment did not know that Fiona was there undercover and part of a police operation. Upon arrival, Fiona greeted the receptionist, filled out some paperwork and was escorted by Appellant to the massage room. She set up

3

her recording device before fully disrobing, positioning it to capture the best audio without showing her nude body. Before the massage began, Fiona informed Appellant that she might fall asleep during the session and mentioned needing work on her sciatic nerve and lower back.

The massage began normally but then Fiona felt a forceful motion as Appellant inserted his fingers into her vagina. Fiona, who had not fallen asleep, testified that Appellant also digitally penetrated her anus, causing her physical pain. She then used the "bust signal" for the operation by telling Appellant, "I don't do that kind of stuff, I'm married." Fiona's fellow officers entered the massage room a few minutes later to remove Appellant from the room. Fiona did not immediately leave after getting dressed; she first went to the bathroom to wipe massage lotion from her vaginal-anal cavity, which was burning her. After Fiona left the massage establishment, she went "to one of the undercover vehicles to call the on-call ADA to" press charges against Appellant. Thereafter, she drove herself to the hospital for a SANE exam. The exam revealed injuries to her labia minora and anus: a 0.5-centimeter acute tear of the labia minora and a 1-centimeter acute tear of her anus.

*Appellant*

Appellant also testified at trial. He stated that he received massage therapy training in 2011, was a registered massage therapist, and had a permit to perform massages in Texas. He testified that he had worked for around six years at other Houston area massage companies and claimed he had never received complaints about his massages. Appellant denied sexually assaulting Emma and Fiona. He claimed the two women lied. He also claimed that the owner of the massage establishment conspired with the police. According to Appellant, the police tried to bribe the owner for $100,000 in insurance money because the owner allegedly

4

was committing insurance fraud. Appellant also asserted the owner stole his IRS refund.

After hearing the evidence, the trial court found Appellant guilty of both offenses as charged and assessed his punishment at seven years' confinement to run concurrently. Appellant filed a timely notice of appeal.

SUFFICIENCY OF THE EVIDENCE

On appeal, Appellant argues the evidence is insufficient to show he sexually assaulted (1) Fiona because the evidence fails to establish Fiona "was unaware of the alleged penetration"; and (2) Emma because the evidence fails to establish Appellant knew Emma "was unaware when the alleged penetration began."

## I. Standard of Review and Applicable Law

When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018); *Tatro v. State*, 580 S.W.3d 740, 743 (Tex. App.—Houston [14th Dist.] 2019, no pet.). During a bench trial, the trial court is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (en banc); *Dearborn v. State*, 420 S.W.3d 366, 372-73 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

The trier of fact may choose to believe or disbelieve all or part of a witness's testimony, and we presume the trier of fact resolved any conflicts in the evidence in favor of the prevailing party. *See Thomas v. State*, 444 S.W.3d 4, 8, 10 (Tex.

5

Crim. App. 2014); *Green v. State*, 607 S.W.3d 147, 152 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Green*, 607 S.W.3d at 152. Evidence is sufficient if the inferences necessary to establish guilt are reasonable based upon the cumulative force of all evidence considered in the light most favorable to the verdict. *Green*, 607 S.W.3d at 152; *see Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

As applicable here, a person commits sexual assault if the person intentionally or knowingly causes the penetration of another person's sexual organ without that person's consent. Tex. Penal Code Ann. § 22.011(a)(1)(A). A sexual assault under subsection (a)(1) is without consent of the other person if the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring. *Id*. § 22.011(b)(5).

## II. Application — Complainant Fiona

Appellant contends that Fiona went to the massage establishment as an undercover officer "with the express purpose of being sexually penetrated by her masseuse," and "voluntarily going to an establishment to see a particular person with the expectation that person will penetrate their sexual organ cannot be anything but consent as defined by Texas law."

Contrary to Appellant's assertion, there is no evidence in the record that Fiona went to the massage establishment (1) "with the express purpose of being sexually penetrated" by Appellant or (2) "with the expectation that [Appellant] will penetrate [her] sexual organ." Fiona testified she went to the massage establishment to conduct a compliance check. She testified that there was no expectation she would be touched in her anogenital area, and she did not consent to

6

any anogenital touching. Therefore, Appellant's contention that Fiona consented to the penetration of her sexual organ is unsupported.

Appellant further contends the State failed to prove the digital penetration was without Fiona's consent because the evidence shows Fiona was not asleep but "was awake and aware throughout the massage." Appellant believes that the State can only prove Fiona's unawareness if the evidence shows she was asleep or unconscious at the time of the massage.

However, he does not cite any authority to support this claim, and case law provides that a victim may be unaware pursuant to section 22.011(b)(5) even if she is awake. "[T]he fact that a sexual assault victim becomes aware that an assault is occurring does not defeat the defendant's guilt because the assault has already occurred." *See Gutierrez v. State*, 668 S.W.3d 46, 52-53 (Tex. App.—Houston [1st Dist.] 2022, pet. ref'd); *Alavian v. State*, No. 05-15-01549-CR, 2017 WL 1245418, at *3-4 (Tex. App.—Dallas Apr. 5, 2017, pet. ref'd) (mem. op., not designated for publication); *Jennings v. State*, No. 07-09-00047-CR, 2010 WL 5392684, at *3-4 (Tex. App.—Amarillo Dec. 29, 2010, pet. ref'd) (mem. op., not designated for publication).

In *Alavian*, the court of appeals examined a case with facts similar to those presented here. There, the complainant was awake as the defendant massaged her. 2017 WL 1245418, at *1. The defendant "massaged her rear end and then put his hands between her buttocks in such a forceful manner as to stretch her anus." *Id*. He "brushed his hand against her vagina several times, always trying to make it seem like an accident. Towards the end of the leg massage, [the defendant] put one of his fingers in her vagina." *Id*. She testified that she did not consent to penetration of her vagina. *Id*. at *4. On appeal, the defendant argued the evidence does not show a lack of consent or that he knew the complainant was unaware the

sexual assault was occurring. *Id*. at *2. The court of appeals disagreed, stating that by the time the complainant became aware of what defendant was doing, the sexual assault had already occurred. *Id*. at *4.

Here, evidence shows that although Fiona was awake, she only became aware that the sexual assault was occurring when Appellant had inserted his fingers inside her vagina and anus. She testified that she had realized Appellant had penetrated her when he had already done so by "a forceful motion." She testified that she did not consent to Appellant touching her "anogenital region." By the time Fiona became aware of what Appellant was doing, the sexual assault had already occurred. The fact that Fiona became aware the sexual assault was occurring when Appellant penetrated her vagina and anus does not defeat Appellant's guilt "because the assault has already occurred." *See Gutierrez*, 668 S.W.3d at 52-53; *Alavian*, 2017 WL 1245418, at *3-4; *Jennings*, 2010 WL 5392684, at *3-4.

Viewing the evidence in a light most favorable to the verdict, we conclude the trial court could have determined that there is legally sufficient evidence that the digital penetration was without Fiona's consent and that Fiona was unaware the sexual assault was occurring. Accordingly, we overrule Appellant's argument that the evidence is insufficient to show he sexually assaulted Fiona.

## III. Application — Complainant Emma

We next turn to Appellant's argument that the evidence is insufficient to show he sexually assaulted Emma because the evidence fails to establish Appellant knew Emma "was unaware when the alleged penetration began." In that regard, Appellant states that (1) Emma "did not testify she told Appellant she might fall asleep during the massage and there was no evidence as to any sleeping habits that would clearly indicate if/when she was asleep (like, for example, snoring)"; (2)

8

Emma fell asleep face down on the massage table "and allegedly woke up to being penetrated vaginally"; and (3) "[g]iven that her face was not visible, it is hard to imagine how Appellant could have known she was asleep." We disagree.

Emma testified that she did not consent to Appellant touching or penetrating her vagina. She manifested her lack of consent by telling Appellant to stop as soon as she woke up because Appellant had digitally penetrated her vagina. She testified that Appellant "nervously said: Okay, okay, okay" and fumbled around with hot stones before placing them on her back. She also testified that Appellant seemed aware that his actions were wrong, describing his demeanor as acknowledging his wrongful behavior. She stated his "demeanor, after he woke me up, he knew — by every next move, that he knew it was wrong."

From Emma's testimony, the trial court could have determined that Appellant knew Emma was lying face down (whether asleep or not) and could not possibly have been aware of the sexual assault by digital penetration until it actually occurred. The trial court also could have concluded from Appellant's reaction and behavior after he digitally penetrated Emma and she told him to stop that he realized he woke up Emma and she caught him sexually assaulting her. Besides, whether Appellant saw Emma was asleep or not is inconsequential. Because Emma was turned around away from Appellant, the trial court reasonably could have concluded that Appellant knew she was unaware of his sexual assault until it was complete. *See Alavian*, 2017 WL 1245418, at *2-4.

Viewing the evidence in a light most favorable to the verdict, we conclude the trial court could have determined that there is legally sufficient evidence that Appellant knew Emma "was unaware when the alleged penetration began." Accordingly, we overrule Appellant's argument that the evidence is insufficient to show he sexually assaulted Emma.

9

**CONCLUSION**

We affirm the trial court's judgments in case numbers 14-23-00084-CR (1643919) and 14-23-00085-CR (1643330).


/s/     Meagan Hassan
            Justice


Panel consists of Justices Wise, Spain, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).