# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00096-CV

### The State of Texas ex rel Stephanie Newell

### ORIGINAL PROCEEDING FROM BELL COUNTY

## O P I N I O N

Relator the State of Texas, acting by and through Stephanie Newell, the Criminal District Attorney for Bell County, Texas, filed a petition for writ of mandamus and application for emergency temporary stay with this Court seeking mandamus relief against Respondent, the Honorable Wade Nicholas Faulkner, presiding judge of the 478th District Court of Bell County, Texas, who denied the State a jury instruction on the law of parties during the murder trial of Nakealon Mosley, real party in interest. We granted the emergency motion and stayed the proceedings in the court below. Having considered the petition, the response, the reply, the records provided, and supplemental briefing from the parties, we will conditionally grant the petition.

## BACKGROUND

The State charged Mosley with the murder of Francine Martinez. In a two-paragraph indictment, the State alleged that Mosley:

Paragraph A

did then and there, individually and as a party with an unknown individual, intentionally and knowingly commit an act clearly dangerous to human life, to-wit: fire a firearm in the direction of Francine Martinez, that caused the death of Francine Martinez, and the defendant was then and there in the course of intentionally and knowingly committing a felony, to-wit: Deadly Conduct, and said death of Francine Martinez was caused while the defendant was in the course of and in furtherance of the commission of said felony

Paragraph B

did then and there, individually and as a party with an unknown individual, intentionally and knowingly cause the death of an individual, namely Francine Martinez, by shooting the said Francine Martinez with a firearm.

Although the State alleged that Mosley committed the offense "individually and as a party with an unknown individual," there was evidence presented at trial that the "unknown individual" was Demetrious Jones, whom the State had also charged with Martinez's murder

The evidence showed that on the night of the murder, someone in a white Chrysler shot Martinez while she was a passenger in another vehicle, that Mosley was in the Chrysler at the time of the shooting, and that in phone calls made from jail, Mosley had named Jones as the shooter and the driver of the Chrysler. In its opening statement, the State acknowledged that it suspected Jones was the driver:

[The State]: And I believe that you'll see some video that shows Nakealon Mosley following Francine to the car, Francine getting in the passenger side of that vehicle, Tireen Wright [Francine's boyfriend] driving away. And Nakealon Mosley runs and gets into another car, a white Chrysler 300, that we believe was driven by Demetrious Jones. And they chased –

2

| [Defense counsel]: | Judge, I'm going to object. The State has alleged a party unknown. They have not alleged a specific name. Case law on this matters. And so I would object to any representation beyond a person unknown because that is what the State has plead. |
|---|---|
| [The Court]: | State? |
| [The State]: | Your Honor, it's suspected to be Demetrious Jones. I think that I can say that. |
| [The Court]: | Objection's overruled. Go ahead. |
| [The State]: | And you will see that that white Chrysler 300 follows Mr. Wright's red Dodge Challenger out of that parking lot. Seconds later shots rang out. Eight shots hit that red Challenger. One shot hit Francine in the head. Francine is taken to the hospital. She survives for a few days. And ultimately she succumbs to those injuries. |

Other evidence presented at trial relating to Jones's identity as the "unknown individual" included that officers had performed a digital extraction of a phone belonging to Jones, that in an interview with police, Mosley had named Jones as the driver of the Chrysler, and that the lead detective in the case, when speaking to the grand jury about Mosley's case, had mentioned Jones's name.

After the close of evidence, defense counsel moved for a directed verdict on the ground that "the jury has no evidence before it regarding an unknown person that was not known to the grand jury at the time" of the indictment or that "the grand jury use[d] due diligence to try and ascertain or properly indict an unknown person." Counsel continued, "As a result, pursuant to *Polk v. State*, 749 S.W.2d 813 [(Tex. Crim. App. 1988)], it creates a fatal variance in their indictment that cannot be cured." The prosecutor responded, "I think I would agree that if the

3

indictment was returned alleging—you know, charging an unknown individual, they would need—we would need to exercise due diligence to find out who that person is." "But," the prosecutor continued, "in the law of parties, this is about whether or not Nakealon Mosley acted individually or as a party with another person. So identifying that individual is not required as an element in the proof against Nakealon Mosley." Mosley replied that the State's position was contrary to *Polk* and related cases, and the prosecutor asked for an opportunity to review those cases. The district court stated that it had reviewed the cases and tended to agree with Mosley's position:

> And, State, as [defense counsel] indicated, I don't think he's—he's not making a law of parties argument. It would appear to me—and I don't want to put words in your mouth, [defense counsel]—but he's arguing that the grand jury indicted [Mosley] saying that he acted with an unknown party and that at the time they indicted him, they knew or with reasonable diligence could have known the name or names of those unknown party or parties and failed to indict it. And the cases that I read indicate that that is a fatal variance.

However, the district court added that it would give the State the opportunity to review the cases cited by defense counsel, and the parties moved on to discussing other charge-related matters. Following a short recess, the parties continued discussing whether Jones was "unknown" to the grand jury when it indicted Mosley. At no point during the discussion did defense counsel argue that Mosley lacked notice of the charged offense because the State alleged an "unknown individual" rather than Jones. Instead, defense counsel framed his argument as a failure of the State to meet its evidentiary burden of proof.

At the conclusion of the discussion, the district court informed the parties that it would issue its ruling on Monday morning after "tak[ing] the weekend to do—to read the cases that everybody cited and perhaps do some research of [its] own." On Saturday night, the district

court sent an email to the parties informing them that it was "granting the defense's request for a directed verdict as to party liability" and that it would not include an instruction on party liability in the jury charge. The district court added that it would "follow up with written findings of fact and conclusions of law." In response, the State sent the court an email asking it to reconsider its ruling and informing it that if the court did not submit an instruction on party liability to the jury, the State intended to seek a writ of mandamus. On Monday morning, the district court announced that although it had reconsidered its ruling, its ruling would remain the same. The district court explained,

> And for the record, my ruling is based on the following. I will submit written findings of fact and conclusions of law. But, essentially, my ruling is that where it's based upon the fact that there's no requirement that the State allege party liability; however, when they do and when they did in this case, they alleged that the party was an "unknown person." And during the trial an issue was raised as to whether the grand jury knew who that "unknown person" was or could have known or could have identified that "unknown person" if they had exercised reasonable diligence, and that the State presented no evidence during the trial that the grand jury did not know or could not have exercised reasonable diligence, and that is why I granted the Defense's motion.[1]

---

[1] The district court made the following written findings of fact and conclusions of law:

Findings of Fact

1. The defendant was indicted on November 10, 2021.

2. In a two-paragraph indictment, the defendant is alleged "individually and as a party with an unknown individual" to have committed murder.

3. Voir dire began on February 3, 2025.

4. During voir dire, defense counsel mentioned that the state would not be able to prove that the defendant acted with an "unknown individual."

5

5. Prior to any evidence being presented, the name "Demetrius Jones" was mentioned by either or both counsel as being the "unknown individual."

6. In October 2021, Keith Drozd, a Killeen Police Department officer, performed a digital extraction of a phone belonging to Demetrius Jones.

7. On or about September 4, 2021, the defendant told Detective Daniel Hertzog, the lead detective for the Killeen Police Department, that Demetrius Jones was driving the defendant's vehicle on the night in question.

8. Detective Hertzog presented this case to the grand jury in November of 2021.

9. Detective Hertzog gave the grand jury the names of both the defendant and Demetrius Jones.

10. The State presented no evidence of a reasonably diligent inquiry on the part of the grand jury into the identity of "unknown individual."

Conclusions of Law

1. The law of parties need not be pled in the indictment.

2. The indictment in this case limited the defendant's liability to "acting individually and as a party with an unknown individual."

3. Sometimes the State alleges evidentiary matters in its indictment which are not necessary to be proved.

4. Generally, unnecessary words or allegations may be rejected as surplusage if they are not descriptive of that which is legally essential to the validity of an indictment.

5. The exception to the general rule above is that where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated.

6. In this case, although unnecessary, the State alleged that the defendant acted as a party with an unknown individual.

7. An allegation that the name of a person connected with the offense was unknown to the grand jury must be supported by sufficient proof.

6

The district court also reiterated that it would not be submitting the issue of party liability to the jury.  This mandamus proceeding followed.

**STANDARD OF REVIEW**

To obtain mandamus relief in a criminal case, a relator must establish two things. First, she must show that she has no adequate remedy at law to redress her alleged harm.  *In re State ex rel. Ogg*, 692 S.W.3d 481, 484 (Tex. Crim. App. 2024) (citing *In re State ex rel. Young*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007)).  The first requirement is satisfied either when there is no remedy at law or the remedy, "though it technically exists, 'may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate.'"  *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (quoting *Greenwell v. Court of Appeals for Thirteenth Jud. Dist.*, 159 S.W.3d 645, 648–49 (Tex. Crim. App. 2005)).  Second, she must show that the act she seeks to compel is "ministerial" rather than discretionary.  *Ogg*, 692 S.W.3d at 484.  "This second requirement is satisfied if the relator can show she has a clear right to the relief sought—that is, when the facts and circumstances dictate

---

8. Where this allegation becomes an issue at trial, the proof must show that the grand jury used due diligence to ascertain the unknown name.

9. In this case, the allegation that the name of a person connected with the offense was unknown to the grand jury became an issue at trial.

10. The State offered no evidence that the grand jury used due diligence to ascertain the unknown name.

11. The defense request for a partially instructed verdict as to the issue of party liability is granted.

7

but one rational decision under unequivocal, well-settled, and clearly controlling legal principles." *Id*.

## DISCUSSION

**No adequate remedy at law**

Mosley first contends that the State had an adequate remedy at law when it filed its petition because the district court made its decision before the final charge conference, and the State still had an opportunity to ask the district court to reconsider its ruling at that conference. However, the record reflects that the State had already asked the district court to reconsider its ruling, and the district court announced before the conference began that its ruling would not change. Under these circumstances, we agree with the State that "[t]he possibility that Relator could somehow convince Respondent to change his ruling after which Respondent had already made that ruling and reaffirmed it in the face of Relator's first attempt to convince the trial court to reconsider is far too speculative a remedy to constitute an adequate remedy at law." Additionally, the trial court's denial of a requested jury instruction is not a matter that the State can appeal. *See* Tex. Code Crim. Proc. art. 44.01(a) (listing matters that state is entitled to appeal). We conclude that the State has no adequate remedy at law and that the first requirement for mandamus relief is satisfied in this case. *See Weeks*, 391 S.W.3d at 123.

**Clear right to relief**

The trial court is required to give the jury a written charge "setting forth the law applicable to the case." Tex. Code Crim. Proc. art. 36.14. The State argues that the law applicable to this case includes the law of parties and that, accordingly, the district court was

required to include an instruction on party liability in its charge to the jury. On this record, we agree.

It is well-established that "the State is entitled to pursue the charged offense and, thus is entitled to receive a response from the jury on whether the defendant is guilty of the charged offense." *Grey v. State*, 298 S.W.3d 644, 649–50 (Tex. Crim. App. 2009). The State "chooses what offense to pursue" and the "legal theories available to prove the charged offense." *Weeks*, 391 S.W.3d at 124. "[I]t is the State's prosecution, and the State is entitled to pursue any available theories of criminal liability to the broadest extent possible under the charging instrument and the evidence." *Id.*

One such theory of criminal liability is the law of parties, which makes a person criminally responsible for the conduct of another under certain circumstances. *See* Tex. Penal Code § 7.02(a). "Regardless of whether it is pled in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence." *Weeks*, 391 S.W.3d at 124; *see Marable v. State*, 85 S.W.3d 287, 287 (Tex. Crim. App. 2002) ("[I]t is well-settled that the law of parties need not be pled in the indictment."). "If party liability can legally apply to the offense at issue and is supported by the evidence, then the State is entitled to its submission." *Weeks*, 391 S.W.3d at 124.

The law of parties applies to the offense of murder, *see, e.g.*, *Padilla v. State*, 698 S.W.3d 589, 594-95 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd), and there was evidence presented at trial that supported Mosley's guilt as a party to that offense. This evidence included video footage showing Mosley entering the passenger side of the suspect vehicle and recorded phone calls from jail in which Mosley named Jones as the driver of the vehicle and the shooter.

9

Nevertheless, the district court denied the State an instruction on the law of parties because the State had alleged that Mosley had acted as a party with "an unknown individual," an allegation that the district court concluded "must be supported by sufficient proof." The district court further concluded that "[w]here this allegation becomes an issue at trial, the proof must show that the grand jury used due diligence to ascertain the unknown name." The district court found that "[i]n this case, the [unknown name] allegation . . . became an issue at trial," but "[t]he State offered no evidence that the grand jury used due diligence to ascertain the unknown name." For these reasons, the district court granted Mosley's request for a directed verdict as to the issue of party liability and denied the State an instruction on the law of parties.

The district court's conclusions were based on the due-diligence rule, a rule for reviewing the sufficiency of the evidence in cases where the State has alleged an "unknown" matter. The rule originated in *Jorasco v. State*, 6 Tex. App. 238 (Tex. Ct. App. 1879), a case in which the State had alleged that the defendant had unlawfully taken a horse from "some person to the grand jurors unknown." *Id*. at 241. However, the evidence presented at trial showed that the identity of the horse's owner was known to witnesses who testified at trial and that the grand jury, "by the exercise of ordinary diligence," should have known the name of the owner. *Id*. at 242-44. Accordingly, the court concluded that "the evidence does not sustain the indictment" and reversed the conviction. *Id*.

The due-diligence rule was applied more recently in *Hicks v. State*, 860 S.W.2d 419 (Tex. Crim. App. 1993), a case in which the State had alleged that the defendant had murdered the victim "by beating and striking her with a blunt instrument, the exact nature and description of which is to the Grand Jury unknown." *Id*. at 425. In *Hicks*, the court of criminal appeals explained that "[w]hen an indictment alleges that the manner or means of inflicting the

10

injury is unknown and the evidence at trial does not establish the type of weapon used, a prima facie showing is made that the weapon was unknown to the grand jury." *Id*. at 424. On the other hand, "if the evidence at trial shows what object was used to inflict the injury, then the State must prove that the grand jury used due diligence in attempting to ascertain the weapon used." *Id*. The court reviewed the evidence presented at trial and determined that "[b]ecause the evidence is inconclusive as to the instrumentality that was responsible for the deceased's death, the State need not prove that the grand jury used due diligence in attempting to ascertain the murder weapon." *Id*. at 425. The court also compared the evidence to the allegations in the actual jury charge, which included the "unknown" allegation, and found that the evidence was sufficient to support the conviction. *Id*. at 426; *see also Polk*, 749 S.W.2d at 817 (case involved allegation that original thief of stolen property was unknown to grand jury; court concluded that "grand jury due diligence must be proven by the State only after the evidence reveals that the original thief's identity was known or capable of being discovered").

However, the due-diligence rule is no longer good law, as explained by the court of criminal appeals in *Sanchez v. State*, 376 S.W.3d 767 (Tex. Crim. App. 2012) (op. on reh'g). In *Sanchez*, the defendant was indicted for murder. *Id*. at 770. The indictment alleged four alternative manner and means of committing the murder, two of which were alleged to be "unknown" to the grand jury, and the jury charge tracked the allegations in the indictment. *Id*. However, there was evidence presented at trial that "the cause of death was asphyxia and the manner and means of death was strangulation, either manually or by a stun gun or both." *Id*.

Relying on *Hicks*, the intermediate court of appeals held that "the trial court committed reversible error by permitting the jury to convict appellant on theories not supported by the evidence," i.e., the theories alleging an "unknown" manner and means of committing the

11

offense. *Id*. After faulting the State "for not producing evidence that the grand jury had used due diligence in attempting to ascertain the cause of death when it issued its indictment alleging unknown manner and means," the intermediate court concluded that "the jury instructions were erroneous because they permitted the State to convict under an unknown-manner-and-means theory when the evidence at trial established a known manner and means." *Id*.

The court of criminal appeals reversed, explaining that *Hicks* was no longer "viable" after its decision in *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997):

> Since *Jorasco*, which conducted the sufficiency review by comparing the evidence to the indictment, and *Hicks*, which conducted the sufficiency review by comparing the evidence to the actual jury charge, this Court has determined, in *Malik v. State*, that sufficiency review should be conducted by comparing the evidence to the hypothetically correct jury charge. . . . Because a sufficiency review now compares the evidence to a hypothetically correct jury instruction rather than to the indictment or actual jury instruction, this Court has concluded that "the rule in cases like *Hicks* is no longer viable in light of our decision in *Malik*." . . . Because *Malik* has rendered defunct the *Hicks* rule, we overrule *Hicks*. And because appellant's argument relies on the viability of *Hicks*, it fails. We conclude the court of appeals erred in applying the *Hicks* rule to appellant's jury-charge-error complaint . . . .

*Sanchez*, 376 S.W.3d at 772 (internal citations omitted).

The district court similarly erred here. Rather than relying on the "defunct" due-diligence rule in concluding that Mosley was entitled to a directed verdict on party liability and that the State was not entitled to a jury instruction on the law of parties, the district court should have evaluated the sufficiency of the evidence against a hypothetically correct jury charge. At this point it is well-established that "[s]uch a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

12

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

"A hypothetically correct charge has its basis in the indictment allegations." *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001). "For instance, the hypothetically correct charge would include an indictment allegation which is necessary to give the defendant adequate notice of the charge against him so as to meaningfully defend himself." *Id.* at 256. On the other hand, "a hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Id.*

"A 'variance' occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial." *Id.* at 246. "In a variance situation, the State has proven the defendant guilty of a crime, but has proven its commission in a manner that varies from the allegations in the charging instrument." *Id.* "Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge, but allegations giving rise to material variances must be included." *Id.* at 257. "Only a 'material' variance, one that prejudices a defendant's substantial rights, will render the evidence insufficient." *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). "This happens when the indictment, as written, 1) fails to adequately inform the defendant of the charge against him, or 2) subjects the defendant to the risk of being prosecuted later for the same crime." *Id.* The court of criminal appeals has recognized three different categories of variance:

1. a statutory allegation that defines the offense; not subject to materiality analysis, or, if it is, is always material; the hypothetically correct jury charge will always include the statutory allegations in the indictment;

2. a non-statutory allegation that is descriptive of an element of the offense

13

that defines or helps define the allowable unit of prosecution; sometimes material; the hypothetically correct jury charge will sometimes include the non-statutory allegations in the indictment and sometimes not;

3.  a non-statutory allegation that has nothing to do with the allowable unit of prosecution; never material; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Id*.  "The bottom line is that, in a sufficiency review, we tolerate variances as long as they are not so great that the proof at trial 'shows an entirely different offense' than what was alleged in the charging instrument." *Id*.

The alleged offense in this case is murder.  The identity of a party to a murder is not a statutory allegation that defines the offense, *see* Tex. Penal Code 19.02(b) (defining offense of murder); *see also Leza v. State*, 351 S.W.3d 344, 357 (Tex. Crim. App. 2011) (explaining that statutory provisions relating to law of parties do not define offense of murder), and thus a variance between the pleading and proof regarding the party's identity is not a category-one variance that is "always material."  Instead, the identity of a party to a murder is a non-statutory allegation.  "[I]n contrast to our treatment of statutory allegations, for non-statutory allegations we tolerate some variation in pleading and proof." *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012).  "We tolerate 'little mistakes' that do not prejudice the defendant's substantial rights but we will not tolerate a variance that really amounts to a failure to prove the offense alleged." *Id*.

In *Johnson*, the court of criminal appeals elaborated on this concept in the context of a murder prosecution, albeit in dicta[2]:

---

    [2]  In *Johnson v. State*, the State charged the defendant with the offense of aggravated assault causing serious bodily injury.  364 S.W.3d 292, 293, 298 (Tex. Crim. App. 2012).

14

For example, in a murder prosecution, the victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial. If the State has alleged the murder of 'Dangerous Dan' but has proved, instead, the murder of 'Little Nell,' then the State has proved a different murder than it has alleged, and an acquittal is required.

The key to this conclusion is that each victim is an allowable unit of prosecution for the offense of murder. If there are multiple murder victims, the State may obtain multiple murder convictions. So, the murder of one individual is a different offense from the murder of a different individual. But some types of facts—such as the method by which a murder is committed—do not relate at all to the allowable unit of prosecution. The State could allege "poisoning, garroting, shooting, stabbing, or drowning," of a single individual, and those different acts would simply be alternate methods of committing a single offense. With only one victim, there can be only one murder, regardless of how that murder is committed.

*Id.* at 295-96.

The court went on to explain that determining the "allowable unit of prosecution" for an offense generally involves ascertaining "the focus or gravamen of the offense," and for the offense of murder, the focus is that the victim was killed:

"Stabbing with a knife" and "bludgeoning with a baseball bat" are two possible ways of murdering Dangerous Dan, but they do not constitute separate offenses. These methods of committing murder do describe an element of the offense: the element of causation. But murder is a result-of-conduct crime. What caused the victim's death is not the focus or gravamen of the offense; the focus or gravamen of the offense is that the victim was killed. Variances such as this can never be material because such a variance can never show an "entirely different offense" than what was alleged.

*Id.* at 298.

Following this reasoning, we conclude that in a murder prosecution, the identity of a party is not the focus or gravamen of the offense. In this case, the indictment alleged that Mosley killed Francine Martinez, "individually and as a party with an unknown individual." Whether this individual was unknown or known to the grand jury has "nothing to do with the allowable unit of prosecution for murder," i.e., that the victim was killed. On this record, we cannot conclude that this variance "showed an entirely different offense" or prejudiced Mosley's substantial rights by failing to adequately inform him of the charged offense or subjected him to the risk of being prosecuted later for the same crime. Accordingly, any variance between the pleading and the proof was not material and Mosley was not entitled to a directed verdict on party liability. Consequently, the State was entitled to an instruction on the law of parties because such an instruction was supported by the evidence. *See Weeks*, 391 S.W.3d at 124-25.

**Other arguments for denying relief**

Mosley also argues that mandamus relief should be denied for other reasons. First, he contends that the State has "unclean hands" because it filed this mandamus petition to try to force a mistrial in the court below. "The unclean hands doctrine derives from the equitable principle that the party seeking equity must come into court with clean hands." *In re D.D.*, 661 S.W.3d 608, 621 (Tex. App.—El Paso 2023, orig. proceeding). "It allows a court to refuse to grant equitable relief sought by one whose conduct in connection with the same matter or transaction has violated the principles of equity and righteous dealing." *Id*. "The doctrine will be applied only to one seeking equity 'whose own conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has

16

violated the principles of equity and righteous dealing.'" *Id.* (quoting *Thomas v. McNair*, 882 S.W.2d 870, 880-81 (Tex. App.—Corpus Christi–Edinburg 1994, no writ)).

Here, there is nothing in the record to suggest that the State filed this mandamus petition to secure a mistrial in the court below. Rather, the State was attempting to receive an instruction on the law of parties, an instruction to which it was entitled based on the evidence presented at trial. Moreover, before filing its mandamus petition, the State asked the district court to reconsider its ruling. The State sought mandamus relief only after the district court announced that its ruling would not change, which suggests that the State was hoping to avoid having to file a mandamus petition. We cannot conclude on this record that the State's conduct was "unconscientious, unjust, or marked by a want of good faith."

Mosley also complains of the State's failure to provide the Court with a copy of the State's proposed instruction on the law of parties. *See* Tex. R. App. P. 52.7(a)(1) ("Relator must file with the petition a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding."). However, the basis of the State's complaint here is not the inclusion or exclusion of specific language in an instruction on party liability but the refusal of the district court to include *any* instruction on the law of parties in the charge. In its prayer for relief, the State asks this Court to order the district court to "include *an* instruction on the law of parties within the jury charge of this case." (emphasis added). Consistent with that request, we hold only that the State is entitled to an instruction on the law of parties in this case.[3]

---

[3] *See, e.g.*, Elizabeth Berry & George Gallagher, 1 Texas Criminal Jury Charges § 2:160 ("Standard Parties Charge").

Finally, Mosley contends that because this case presents an issue of first impression, it is inappropriate for mandamus relief. However, "an issue of first impression can sometimes qualify for mandamus relief when the factual scenario has never been precisely addressed but the principle of law has been clearly established." *Weeks*, 391 S.W.3d at 122. Here, as we have already explained, it is clearly established that the State is entitled to an instruction on the law of parties whenever it is raised by the evidence and that the legal basis for the district court's denial of that instruction is no longer good law. Accordingly, mandamus relief is appropriate in this case.

## CONCLUSION

We conditionally grant the State's petition for writ of mandamus. We lift our temporary stay of the trial-level proceedings and direct the district court to include an instruction on the law of parties in the court's charge to the jury. We are confident that the district court will comply, and our writ will issue only if it does not.

_____

Gisela D. Triana, Justice

Before Justices Triana, Theofanis, and Crump

Filed: April 25, 2025

18